Kransky *v.* Glen Alden Coal Company, Appellant.

Argued May 28, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Franklin B. Gelder,* with him *J. H. Oliver,* for appellant.

*Frank J. Flannery,* with him *Patrick J. Flannery,* for appellee.

OPINION BY MR. JUSTICE JONES, June 25, 1946:

This appeal is from an order of the Superior Court affirming an order of the Court of Common Pleas of Luzerne County which, in turn, had affirmed an award of compensation to the minor claimant, Joan Edith Coates, for the death of John Kransky, an employee of the defendant company, who was killed in the course of his employment. The sole question involved is whether the findings made by the referee, which the Compensation Board confirmed and adopted, warranted a conclusion of law that Kransky stood *in loco parentis* to the minor claimant.

In order to qualify, within the meaning of the Workmen's Compensation Act, as a "child" of an employee who is not its natural parent, it is necessary (1) that the "child" was a member of the employee's household at the time of his death and (2) that the latter stood *in loco parentis* to the "child": see Sec. 307 (7) of the

Act of June 2, 1915, as amended, 77 P.S. § 562. The first requisite calls for a finding of fact; the second embraces a conclusion of law.

The referee competently found, and the Board confirmed, that Joan Edith Coates, the minor claimant in this case, was a member of Kransky's household at the time of his death. That fact is therefore final and may not be inquired into upon appellate review. The referee also found, and the Board likewise confirmed with equal finality, that from the day of the minor claimant's birth she was "maintained and supported entirely by the decedent" and that at the time of his death she and her grandmother "were both residing in the decedent's household and were receiving their entire support and maintenance from the decedent". The arrangement under which the child's support and maintenance were so provided grew out of the following circumstances.

At the time of Kransky's death, he and the child's grandmother, Mrs. Edith Coates, were living together in a meretricious relation and had been so living for the preceding eight years. Mrs. Coates had a lawful husband living from whom she had never been divorced. The child, Joan, was born on July 29, 1940, to Robert Coates, Jr. (Mrs. Edith Coates' son) and his wife. When the child was a day or two old, the grandmother, accompanied by Kransky, took her to their home where she lived until Kransky's death on August 5, 1941. On March 15, 1941, Joan then being about eight months old, her parents separated under articles of agreement wherein the natural mother was accorded the "full custody" of Joan and an older sister "to maintain, support and provide for said children".

Aside from the support furnished the child by Kransky, as above stated, there is not a word of testimony and, naturally, no finding that he had ever indicated by word or act any intention on his part to assume the responsibilities of a lawful father to the child. *In loco parentis* is a legal status and proof of essential facts

is required to support a conclusion that such a relationship existed. While the support and maintenance of a dependent child is a fact of evidentiary value in determining whether the one furnishing the support stands *in loco parentis* to the child, it is necessary that the evidence as a whole be sufficient to justify a finding that the supporting person intended to assume the *rights, duties and responsibilities* of a lawful parent to the child.

In *Robinson's Estate,* 35 Pa. Superior Ct. 192, 195, the Superior Court adopted as a "proper definition" of a person *in loco parentis* to a child, viz., "a person who *means* to put himself in the situation of a lawful father of the child with reference to the father's office and duty of making provision for the child". (Emphasis supplied.) That definition has since been approved and followed a number of times but always the *intention* to assume a parent's responsibility for a child has been an important element in determining the existence of the relationship: see *Flinn v. Sonman Shaft Coal Company,* 153 Pa. Superior Ct. 76, 79, 33 A. 2d 525; *Renovich v. Bethlehem Mines Corporation,* 131 Pa. Superior Ct. 351, 354, 200 A. 122; *Dime Trust & Safe Deposit Co. Etc. v. Philadelphia & Reading Coal & Iron Co.,* 78 Pa. Superior Ct. 124, 131.

In the instant case the fact that the child was supported and maintained out of Kransky's earnings during the one year she was in his household prior to his death is as referable to a desire on his part to humor or accommodate the whims or plans of the grandmother as it is to any assumption by him of a father's responsibility for the child regardless of whether or not he and the grandmother continued to live together. The unlawful relation between them, of course, did not preclude Kransky's assuming the place of a parent to the child if that was what he in fact intended to do: cf. *Union Trust Company v. Union Collieries Company,* 131 Pa. Superior Ct. 405, 412-413, 200 A. 267; *Dime Trust & Safe Deposit Co.*

*Etc. v. Philadelphia & Reading Coal & Iron Co.,* supra.
But there is nothing in the record in this case which
shows with any reasonable certainty that such was Kran-
sky's intention. The impermanence of the living arrange-
ment between him and Mrs. Coates demanded some more
affirmative indication that he intended to assume re-
sponsibility for the child than did the mere fact that,
while the grandmother continued to live with him, her
grandchild was supported out of the household funds
which he supplied.

Furthermore, the child's natural father was living,
but there was neither allegation nor proof that he was
unable to provide for the child. Cf. *Renovich v. Bethle-
hem Mines Corporation,* supra, at p. 356. In the separa-
tion agreement between the father and the mother, the
latter expressly agreed "to maintain, support and pro-
vide" for the child. While that undertaking could not
operate to relieve the father of his legal duty in the
premises and although the child continued to live in
Kransky's household for the remaining five months of
his life, the agreement between the parents with respect
to the custody, care and support of the child negatives
any inference that they had wilfully abandoned the
child. And, nowhere is it asserted that they had done
so. No basis for Kransky's support and maintenance of
the child is anywhere apparent except that it was in fur-
therance of the convenience and pleasure of the grand-
mother. There is nothing in the case from which it could
reasonably be inferred that Kransky intended to provide
for the child in fulfillment of the duty of a lawful parent.
Nor is there any finding that he intended so to do. Both
the referee and the Board arbitrarily assumed the exist-
ence of the requisite legal relationship. In the circum-
stances here shown, facts essential to a conclusion that
the decedent stood *in loco parentis* to the minor claimant
were neither found nor proven.

It has often been said that the Workmen's Compen-
sation Act is to be liberally construed in favor of injured

employees and the dependents of employees killed while at work, as indeed it should be. But, nothing could be more threatening to the integrity of that beneficial statute than to impose a legal liability thereunder for which no just basis in law exists.

The order of the Superior Court is reversed and the award vacated.