HERTZ CORPORATION, Petitioner,

v.

WORKERS' COMPENSATION APPEAL
BOARD (JOHNSON), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 30, 1998.

Decided Jan. 11, 1999.

Deborah L. Hartwell, Philadelphia, for petitioner.

No appearance entered on behalf of respondent.

Before FLAHERTY, J., LEADBETTER, J. and NARICK, Senior Judge.

NARICK, Senior Judge.

This case presents two questions for our review. First, whether a child may collect death benefits where the decedent stood in loco parentis even though the child's natural parent was capable of supporting the child, and second, whether death benefits terminate when the natural parent resumes custody and financial responsibility for the child following the decedent's death. This appeal is brought by Hertz Corporation (Employer) from a Decision and Order of the Workers' Compensation Appeal Board (Board) affirming the Order of the Workers' Compensation Judge (WCJ) granting Jameel Johnson's (Claimant) Fatal Claim Petition.

Bernice Harris (Decedent) suffered a fatal injury in the course and scope of her employment on October 28, 1989. Decedent worked for Employer as a parking attendant when the vehicle she was operating crashed through the fourth floor wall of a parking garage causing her death. On November 14, 1991, Claimant, Decedent's grandson, filed a Fatal Claim Petition asserting his entitlement to death benefits on the basis of dependency. Claimant was age 12 at the time of his grandmother's death. Employer filed a timely answer denying Claimant's entitlement to benefits. At the time of her death Decedent held two jobs. Her total average weekly wage of $330.11 consisted of concurrent wages of $86.20 from Employer and $243.91 from the School District of Philadelphia.

The WCJ conducted multiple hearings between March 23, 1992 and March 16, 1995. Claimant presented his own testimony as well as that of his mother, Veronica Smokes; Decedent's estranged husband, Ernest Harris; and Claimant's scout master, John Armstead. Employer did not present any testimony but did offer various documents into evidence during cross-examination for the purpose of refuting in loco parentis status.

The relevant facts of this case are as follows. Claimant's mother (Ms. Smokes) voluntarily relinquished custody of her three children to Decedent upon entering the U.S. Army on July 13, 1983. Ms. Smokes had divorced Claimant's father prior to her enlistment. The military required Ms. Smokes to complete an affidavit demonstrating guardianship for her children during her military tenure. Although Ms. Smokes placed her children in the care of her mother, the Army's guardianship affidavit did not effectuate the transfer of legal custody of her children. Beginning in July 1983, Decedent assumed parental responsibility for Ms. Smokes' children including all financial, disciplinary, educational and daily care duties. After Ms. Smokes failed to achieve the requisite training standards, she received an honorable discharge from the Army in November 1983.

Ms. Smokes testified that after her discharge she moved back into Decedent's residence and that Decedent remained responsible for the care and support of her sons. She further testified that she moved out of Decedent's home in 1985 and subsequently married Henry Smokes. At some point thereafter, Claimant's two brothers moved in with their mother and her husband, however, Claimant desired to remain with Decedent. At all times from 1983 through Decedent's death in 1989, Claimant resided with and remained dependant upon Decedent. Claimant had little contact with his birth father and Ms. Smokes did not seek enforcement of the support order directing the father to provide for his children financially. Ms. Smokes testified that she did not provide Decedent with any assistance in raising Claimant from 1983 through Decedent's death in 1989. On July 13, 1987, Ms. Smokes accepted a correctional officer position with the City of Philadelphia earning an annual salary of $32,000 at the time of her testimony in 1992.

The WCJ issued a decision and order on March 8, 1996. The WCJ found all of Claimant's witnesses to be credible and awarded fatal claim dependency benefits in the

amount of $105.64 [1] per week beginning October 2, 1989 and continuing until Claimant no longer qualifies for said benefits under § 307(7) of the Workers' Compensation Act (Act).[2] Employer timely appealed the WCJ's decision and order to the Board, which affirmed the grant of dependency benefits. The Board's order, issued December 18, 1997, found that substantial evidence [3] exists in the record to support the WCJ's decision. Employer now appeals the Board's order to this Court.[4]

We begin by noting the pertinent language of § 307(7) of the Act as follows:

Compensation shall be payable under this section to or on account of any child ... only if and while such child ... is under the age of eighteen unless such child ... is enrolled as a full-time student in any accredited educational institution when compensation shall continue until such student becomes twenty-three.... If members of decedent's household at the time of his death, the terms "child" and "children" shall include step-children, adopted children and children to whom he stood in loco parentis and children of the deceased.... [5]

Our courts have interpreted this provision to mean that legitimate, natural or adoptive children are entitled to benefits without regard to household membership or actual dependency. *Lehigh Foundations, Inc. v. Workmen's Compensation Appeal Board, Mildred B. Kelly, et. al.,* 39 Pa.Cmwlth. 416, 395 A.2d 576 (1978). Illegitimate children and children related via in loco parentis status are entitled to benefits only if they can prove membership in the decedent's household and actual dependency. *Id.*

The Act does not define what constitutes an in loco parentis relationship so we must turn to the case law. To establish an in loco parentis relationship one must intend to put him or herself in the situation of a lawful parent to the child, with reference to the parent's office and duty of making provision for the child. *D'Auria v. Liposky,* 197 Pa.Super. 271, 177 A.2d 133 (1962). More than mere voluntary assumption of financial support is necessary to establish in loco parentis status. *Id.* Additionally, other indices of parenting must exist such as disciplining the child, preparing meals, engaging in leisure activities, selecting the child's clothing and obtaining medical care. *Celotex Corporation v. Workmen's Compensation Appeal Board (Hargust),* 41 Pa.Cmwlth. 416, 399 A.2d 171 (1979). In short, one must intend to function as the child's parent and assume all daily responsibilities commensurate with such a position.

Employer first argues that the provision of the Act addressing in loco parentis dependent relationships only grants benefits where the decedent's in loco parentis status was created by necessity and not convenience.[6] Essentially, Employer asserts that Claimant's natural parents should be required to assume financial responsibility for him and responsibility for Decedent's voluntary assumption of his care should not be passed on to employer via dependency death benefits. Employer maintains that once Ms. Smokes remarried she was always willing to resume

---

1. Section 307(1)(a) provides that where there is no widow or widower and the decedent leaves only one child eligible for dependency benefits, that child is entitled to 32 per centum of wages of the deceased, not to exceed the statewide average weekly wage. In this case, Decedent's average weekly wage was $330.11, resulting in an award of weekly benefits in the amount of $105.64. 77 P.S. § 562.

2. Section 307(7) provides that children are eligible for death benefits if they are either under age eighteen, disabled, or until age 23 provided the child remains a full-time student. Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 562.

3. Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Pavonarius v. Workers' Compensation Appeal Board (Samuel Levitt Sheet Metal, Inc.),* 714 A.2d 1135 (Pa.Cmwlth.1998).

4. Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed or whether necessary findings of fact are supported by substantial competent evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

5. 77 P.S. § 562.

6. Claimant was precluded from filing a brief in this appeal.

her parental role with regard to Claimant and that her position as a correctional officer demonstrated her ability to provide for his needs. Employer further argues that Claimant's natural father continued to reside in the same city as Claimant and his mother. Employer maintains that it should not be required to assume a support obligation for Claimant where Ms. Smokes' failed to enforce the support order obtained through her divorce.

In support of its position Employer relies on a line of cases decided more than fifty years prior to this appeal which include *Renovich v. Bethlehem Mines Corporation*, 131 Pa.Super. 351, 200 A. 122 (1938); *Fitzpatrick v. Hudson Coal Co.*, 159 Pa.Super. 53, 46 A.2d 589 (1946); and *Kransky v. Glen Alden Coal Co.*, 354 Pa. 425, 47 A.2d 645 (1946). These cases each involve a set of facts where a grandparent supported a child within their household despite the ability of a natural parent to fulfill this duty. In *Renovich*, the decedent's son was physically disabled and unable to work. The decedent's disabled son and his two children were members of the decedent's household and dependent upon him for their support. The *Renovich* court affirmed the in loco parentis status of the decedent. The court held that where the natural father is "so physically disabled as to be unable to work and support his children, the intention of the grandfather to assume an 'in loco parentis' relationship to them [is] manifest." *Renovich*.

In *Fitzpatrick*, the decedent took in his daughter and two grandchildren when their father deserted his family. The decedent accepted the responsibility of caring for and supporting these children for more than a year before his death, including the procurement of proper medical care. The employer in *Fitzpatrick* argued that the decedent did not stand in loco parentis to his grandchildren because their father was still legally liable and financially able to support his children. In resolving the case, the *Fitzpatrick* court held that the natural father's ability to support his children was relevant but not controlling where the grandfather clearly intended to voluntarily assumed an in loco

parentis status which the father readily accepted. *Fitzpatrick*.

In *Kransky*, the decedent lived in a meretricious relationship with the grandmother of the child seeking dependency death benefits. The child's parents were legally separated with custody granted to the mother who also lived in decedent's household. In the separation agreement the child's father expressly agreed to support and provide for the child. The child was only a member of the decedent's household for five months prior to his death and other than financial support, there was no evidence that the decedent intended to assume the role of father to the child. The *Kransky* court held that the decedent evidenced no intent to assume in loco parentis status to the child and that the natural father had recently entered into an agreement to support his child. The court further explained that the decedent's support of the child over the five month period prior to his death was as much attributable to his desire to please the child's grandmother as it was to his intent to function as the child's surrogate father. *Kransky*.

When read together these cases demonstrate that in addition to the accepted requirements of household membership and indices of dependency, these courts consistently relied on the intent of the grandparent to assume in loco parentis status. The intent of the surrogate parent remained the common denominator in each court's analysis of these cases despite the varying degree in willingness and ability of the natural parent to fulfill their duty of support owed their child. In the instant case, Employer would have us rely on the following passage from the *Fitzpatrick* opinion discussing the ability of the natural father to support his child:

In death cases, the purpose of the law is to provide compensation, as a substitute for the support of dependents by a decedent in his lifetime. But where a natural father is physically and financially able and is amenable to process adequate to compel him to discharge his legal duty, the undertaking of a decedent voluntarily assumed during his lifetime may not be passed on to the employer of the decedent under the com-

pensation law, to the further relief of the natural father.

This passage taken alone certainly supports Employer's position. However, rather than the holding in *Fitzpatrick* this quote constitutes dicta whereby the court discussed relevant issues to consider in arriving at its result. The court ultimately resolved the case by examining the manner in which the decedent supported his grandchildren and whether he intended to function as the children's surrogate parent. The *Fitzpatrick* court examined the father's role in his children's life for the purpose of determining the decedent's intent. Inherent in this examination is the recognition that a significant involvement of a natural parent would preclude a guardian from forming the requisite intent to function as the child's parent. This point is evident in the *Kransky* court's determination that in loco parentis status did not attach partially as a result of the natural father's recent commitment in the separation agreement to support and provide for his child.

■ On the facts of this case, we agree with the Board that the WCJ properly granted Claimant benefits. Decedent accepted responsibility for parenting Ms. Smokes' children when she entered military service. Ms. Smokes testified that upon her discharge she was unable to provide and care for her children until she reestablished herself some two years later. During this time Decedent continued to provide and care for her grandchild as well as Ms. Smokes. Once remarried Ms. Smokes resumed custody of two of her sons. Both Decedent and Claimant desired that he continue to reside in Decedent's household and remain in her care. Ms. Smokes testified that she accepted this arrangement and that she provided no support for Claimant. The record further establishes that Claimant's father has never provided any support of Claimant and has little or no contact with him. Applying the Act and relevant interpretive case law, it is clear that the Board correctly upheld the WCJ's grant of dependency benefits. The record contains substantial evidence supporting the WCJ's conclusion that Claimant resided in Decedent's household and that she exhibited the necessary indices of parenting and fully intended

to establish in loco parentis status. As the *Fitzpatrick* court ultimately held, "[t]he fact that decedent here voluntarily assumed the obligation of support does not in itself affect his [or her] legal status, as one in loco parentis under the intent of the [Act]." The Act does not direct that a court inquire as to why a dependent relationship exists between a claimant and a decedent. Rather, the Act only directs that courts determine whether such a relationship exists and, if so, that employers pay compensation pursuant to the statutorily defined amount and duration limits.

■ We now turn to Employer's second appeal argument. Employer asserts that even if we find sufficient evidence to support the award below, Claimant's benefits should terminate at the point when he took up residence at Ms. Smokes' house in December 1989. Employer maintains that any dependency upon Decedent ended when his mother assumed responsibility for Claimant's care. As such, Employer maintains that the WCJ's award of continuing benefits constitutes an error of law.

In support of this argument Employer cites our decision in *Claws Refuse, Inc. v. Workmen's Compensation Appeal Board (Squires)*, 164 Pa.Cmwlth. 424, 643 A.2d 742 (1994). In *Claws Refuse* the WCJ awarded dependency death benefits to a parent of a child whose death was caused by a work-related injury. The WCJ limited the award to a specified period, the end of which coincided with the resumption of the parent's social security benefits. Employer cites *Claws Refuse* as authority which requires that dependency death benefits must be terminated when a claimant can no longer show actual dependency on those benefits for their support. We find that the facts and reasoning of *Claws Refuse* do not apply to the circumstances of this case and, therefore, uphold the Board's order affirming the WCJ's grant of benefits into the future subject to the limitations as defined by the Act.

*Claws Refuse* is distinguishable from the instant case on the basis that children do not have the same capacity as adults to independently provide for themselves. Additionally, § 307(7) of the Act provides specific criteria

for terminating the dependency death benefits of children. 77 P.S. § 562. *Claws Refuse* involved a dependent parent, whereas in this case Claimant is a dependant child. This distinction is important given the manner in which the Act provides for termination of death benefits to various classes of eligible recipients. Section 307 of the Act provides dependency death benefits first to widows or widowers, if none, then to dependent children or siblings and, if none, then to dependent parents. 77 P.S. § 562. The Act specifies four reasons to terminate benefits of a widow or widower: death, remarriage, a meretricious relationship, or living a life of prostitution. The Act further specifies that a dependent child's benefits terminate when the child becomes emancipated at age 18 or at age 23 if the child remains a full-time student. Lastly, the Act provides that death benefits terminate when *any dependent* of a deceased employee dies or remarries or if a widow becomes capable of self-support. The only termination condition applicable to dependent parents is the "any dependent" language which calls for termination when the dependent either dies or remarries. The *Claws Refuse* Court deemed it equitable to also terminate a dependent parent's death benefits if the reason for their dependency ceases to exist, i.e., they regain the ability to provide for themselves. This equity is based on the fact that as an adult a dependent parent is capable of overcoming their dependency and the intent of the Act would not be served by requiring an employer to indefinitely pay benefits to a non-dependent adult. *Claws Refuse.*

Dependent children do not have the capability to become independent. Indeed, our laws are structured to encourage children to complete secondary school and make it difficult for children under the age of 18 to pursue their own financial independence. Unlike the situation where the dependent is a parent, the Act does not provide that a dependent child may continue to receive benefits indefinitely until death or marriage. As delineated earlier, the Act terminates a dependent child's benefits at emancipation or age 23 if the child pursues an education.

Further, when the decedent leaves a dependent child, that child will either be placed in the care of a relative, friend or the state. If Employer's reasoning were followed, there would be no need for the grant of dependency death benefits to any child since their basic needs would always be addressed by someone at all times. The intent of the Act is to grant benefits to the dependent children of deceased employees for the purpose of providing some measure of the support they would have received had their parent or legal guardian not died as a result of their work injuries. The General Assembly did not intend that these benefits continue indefinitely as evidenced by the criteria it defined for terminating said benefits. The equitable justifications cited by the *Claws Refuse* Court in terminating parental death benefits do not exist in the case of dependent children. Therefore, we decline Employer's invitation to extend that holding to the instant case.

Accordingly, we affirm the Board's order upholding the WCJ's decision and order granting Claimant's dependency death benefits effective October 28, 1989 and continuing until he reaches age 18 or until he reaches age 23 if he remains a full-time student.

## ORDER

AND NOW, this 11th day of January, 1999, the order of the Workers' Compensation Appeal Board, dated December 18, 1997, is hereby affirmed. Claimant is granted dependency death benefits effective October 28, 1989 and continuing until he reaches age 18 or until he reaches age 23 if he remains a full-time student.

Judge LEADBETTER dissents.