786 A.2d 913 (2001)
T.B., Appellee,
v.
L.R.M., Appellant.
Supreme Court of Pennsylvania.
Argued September 10, 2001.
December 28, 2001.
*914 Nicholas Banda, Johnstown, for L.R.M.
Mary Elizabeth Solens Luce, Stuart Michael Wilder, Doylestown, for Debra Hein amicus curiae.
Roger Daniel McGill, Edensburg, Patricia M. Logue, for T.B.
Susan Frietsche, Philadelphia, Meredith L. Schalick, Tiffany Lynn Palmer, Seth F. Kreimer, for Support Center for Child Advocates and fifty-four other organizations amicus curiae.
Mary Catherine Roper, Susan Schleck Kleiner, Daniel James Anders, Philadelphia, Eric Paul Cheung, Megan L. Traversari, Haverford, Lawrence Evan Frankel, David Ford Abernethy, Philadelphia, Leslie Cooper, Matthew Coles, for American Civil Liberties Union and American Civil Liberties Union of Pennsylvania.
Before JOHN P. FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

OPINION
ZAPPALA, Justice.
This case involves the application of the doctrine of in loco parentis as a method of conferring standing on one seeking partial custody of a child for purposes of visitation. Because the evidence establishes that Appellee assumed a parental status and discharged parental duties with the consent of the biological parent, the lower courts properly held that Appellee possessed standing to seek visitation. Accordingly, we affirm.
The record establishes that Appellant and Appellee, both females, engaged in an exclusive, intimate relationship. The parties shared finances and expenses through a joint bank account and jointly purchased *915 a home. The parties decided to have a child. They agreed that Appellant would be impregnated by donor sperm and that Appellee would choose the donor.[1] Appellee cared for Appellant during her pregnancy and attended childbirth classes with her. Appellee was the designated co-parent for purposes of being present in the operating room during the birth.
The child, A.M., was born on August 27, 1993. The parties lived together with the child, but did not enter into a formal parenting agreement. Appellant named Appellee as guardian of the child in her will.[2] Appellant and Appellee shared day-to-day child rearing responsibilities, including taking A.M. for medical check-ups and other appointments. A.M. referred to Appellee as "Aunt [T.]" and referred to Appellee's sisters as "aunts" as well. Appellee was active, yet deferential to Appellant in making parental decisions. Appellee either cared for A.M. during the day or took her to daycare. When A.M. fell ill, Appellee stayed home from work to care for her. Appellee had exclusive responsibility for A.M. when Appellant was away from home. The parties also took family vacations together with A.M.
In May of 1996, Appellant and Appellee purchased a new home. Shortly thereafter, Appellee left the home and engaged in a relationship with another woman. In August of 1996, the parties separated. Appellee visited A.M. on September 4, 1996. Thereafter, Appellant refused all visitation requests, telephone calls and gifts for the child.
On October 3, 1996, Appellee filed a "Complaint for Shared Legal and Partial Custody and Visitation." Therein, she contended that she should be granted partial custody and visitation because she acted as A.M.'s parent for more than three years while residing with Appellant. Appellant filed preliminary objections to the complaint, contending that Appellee lacked standing to sue for visitation. On March 17, 1997, a hearing officer held a hearing on both standing and custody/visitation.[3] Relying on J.A.L. v. E.P.H., 453 Pa.Super. 78, 682 A.2d 1314 (1996), the hearing officer concluded that Appellee had standing to seek custody/visitation pursuant to the doctrine of in loco parentis. The hearing officer also found that it would be in A.M.'s best interests to grant Appellee partial custody for purposes of visitation.
Appellant filed timely exceptions to the hearing officer's report.[4] The common pleas court adopted the hearing officer's recommendations and granted Appellee one visitation period per month. The order explicitly recognized that the visitation arrangement is subject to continued review. On September 24, 1997, Appellant filed an appeal in Superior Court. She also filed a petition in the trial court for a stay pending appeal, which was denied. Appellant subsequently filed an application for a stay in Superior Court, which was granted on December 5, 1997, and remains in effect.
*916 On the merits, the en banc Superior Court agreed that Appellee stood in loco parentis to A.M. and therefore had standing to seek visitation. It concluded, however, that the record did not provide an adequate basis for review of the trial court's decision that visitation was in A.M.'s best interests. Accordingly, it vacated the visitation order and remanded for a full hearing to determine whether visitation was in A.M.'s best interests.[5]
We granted allocatur solely to examine whether the lower courts properly applied the common law doctrine of in loco parentis as a method of conferring standing upon Appellee to seek partial custody of A.M. for purposes of visitation.
The scope of review applied by an appellate court to a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that is not supported by competent evidence. McMillen v. McMillen, 529 Pa. 198, 602 A.2d 845, 847 (1992). However, this broad scope of review does not vest an appellate court with the duty or privilege of making its own independent determination. An appellate court may not interfere with the trial court's factual conclusions unless they are unreasonable in view of the trial court's factual findings and thus represent an abuse of discretion. Id.
It is well-established that there is a stringent test for standing in third-party suits[6] for visitation or partial custody due to the respect for the traditionally strong right of parents to raise their children as they see fit. R.M. v. Baxter, 565 Pa. 619, 777 A.2d 446, 450 (2001). The courts generally find standing in third-party visitation and custody cases only where the legislature specifically authorizes the cause of action. Id. A third party has been permitted to maintain an action for custody, however, where that party stands in loco parentis to the child. Gradwell v. Strausser, 610 A.2d at 1002.
In loco parentis is a legal status and proof of essential facts is required to support a conclusion that such a relationship exists. Kransky v. Glen Alden Coal Company, 354 Pa. 425, 47 A.2d 645, 646 (1946). Early cases referencing the doctrine of in loco parentis concerned entitlement to and compensation for children's services. See generally Logan v. Murray, 6 Serg. & Rawle 175 (Pa.1820). The status of in loco parentis has also been referenced in cases involving whether a child should be treated as the child of an in loco parent for life insurance purposes, Young v. Hipple, 273 Pa. 439, 117 A. 185 (1922), and for purposes of entitlement to workers' compensation benefits. Kransky. In recent years, however, the doctrine has been used almost exclusively in matters of child custody. Commonwealth v. Gerstner, 540 Pa. 116, 656 A.2d 108, 112 (1995).
The phrase "in loco parentis" refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of in loco parentis embodies two ideas; first, *917 the assumption of a parental status, and, second, the discharge of parental duties. Id.; Commonwealth ex rel. Morgan v. Smith, 429 Pa. 561, 241 A.2d 531, 533 (1968). The rights and liabilities arising out of an in loco parentis relationship are, as the words imply, exactly the same as between parent and child. Spells v. Spells, 250 Pa.Super. 168, 378 A.2d 879, 882 (1977). The third party in this type of relationship, however, can not place himself in loco parentis in defiance of the parents' wishes and the parent/child relationship. B.A. and A.A. v. E.E., 559 Pa. 545, 741 A.2d 1227, 1229 (1999); Gradwell v. Strausser, 610 A.2d at 1003.
Appellant first contends that our Court should abandon the doctrine of in loco parentis as a means of conferring standing in custody cases. She argues that where the biological parent is fit and opposes custody/visitation, the government should not interfere with the biological parent's wishes. Appellant also asserts that there is no statutory protection of a former partner's interest in the child of another and that Appellee does not fall within the zone of interest that the statute seeks to protect. She maintains that it is the role of the legislature, not the courts, to debate whether public policy dictates that such protection is warranted. Appellant relies on this Court's decision in Ken R. v. Arthur Z., 546 Pa. 49, 682 A.2d 1267 (1996), where we held that a sibling does not have standing to sue for visitation because the statutory scheme does not protect a sibling's interest in that regard.
Appellant's claims are not persuasive. Initially, it should be noted that Appellant did not argue in the lower courts that the well-established doctrine of in loco parentis should be abandoned. Rather, she argued that Appellee did not satisfy the requirements necessary for the assumption of the status. Thus, it is questionable whether the vitality of the in loco parentis doctrine is properly presented in this appeal. In any event, Appellant offers no persuasive reason why the facts of this particular case warrant such a far-reaching change in the common lawa change that could potentially affect the rights of stepparents, aunts, uncles or other family members who have raised children, but lack statutory protection of their interest in the child's visitation or custody.
As the Superior Court noted in J.A.L. v. E.P.H.,
The in loco parentis basis for standing recognizes that the need to guard the family from intrusions by third parties and to protect the rights of the natural parent must be tempered by the paramount need to protect the child's best interest. Thus, while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.
682 A.2d at 1319-20.
We likewise reject Appellant's contention that Appellee lacks standing because the statutory scheme does not encompass former partners or paramours of *918 biological parents.[7]See 23 Pa.C.S. § 5301 (public policy of Commonwealth is to assure continuing contact between children and their parents and grandparents); see also 23 Pa.C.S. § 5313 (grants grandparents standing to petition for custody). Although the factual basis of the claim is accurate, this fact is irrelevant, as Appellee has never relied upon a statutory provision and instead has invoked the common law doctrine of in loco parentis. The mere fact that the statute does not reference the doctrine can not act to repeal by implication what has been entrenched in our common law. See Metropolitan Property and Liability Insurance Company v. Insurance Commissioner, 525 Pa. 306, 580 A.2d 300, 302 (1990) (legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded). In addition, the legislature never revised the domestic relations code to preclude in loco parentis standing, even after the courts had upheld the doctrine and its applicability in this regard. See Pa.C.S. § 1922(4) (when court has construed statutory language, the legislature in subsequent statutes on same subject intends the same construction).
Appellant's reliance on Ken R. is therefore misplaced. Ken R. did not involve settled common law principles such as in loco parentis, but concerned a request that custody and visitation rights be "judicially extended" to those with sibling bonds. Id. at 1269. Applying expressio unius est exclusio alteruis, the Court in Ken R. held that "in light of our case law and principles of statutory construction, we are constrained to find that siblings do not have standing to seek court ordered visitation with their siblings in Pennsylvania." Id. at 1270. Appellee cogently notes that our Court did not reverse a common law right in Ken R. as there was no common law doctrine at stake.
Appellant alternatively argues that, assuming we reaffirm the doctrine of in loco parentis as a method of conferring standing, Appellee can not meet its requirements. Specifically, she contends that because Appellee can never legally adopt A.M., she can not assume the obligations of a "lawful parent." Appellant relies on statutory authority precluding same sex marriages, 23 Pa.C.S. § 1704, and case law holding that a parent's same-sex partner can not adopt that parent's child without the parent relinquishing her parental rights. In re Adoption of C.C.G., 762 A.2d 724 (Pa.Super.2000); In re Adoption of R.B.F., 762 A.2d 739 (Pa.Super.2000), alloc. granted, 784 A.2d 119, 2001 Pa LEXIS 1718 (Pa.2001).
Simply put, the nature of the relationship between Appellant and Appellee has no legal significance to the determination of whether Appellee stands in loco parentis to A.M. The ability to marry the biological parent and the ability to adopt the subject child have never been and are not now factors in determining whether the third party assumed a parental status and *919 discharged parental duties. What is relevant, however, is the method by which the third party gained authority to do so. The record is clear that Appellant consented to Appellee's performance of parental duties. She encouraged Appellee to assume the status of a parent and acquiesced as Appellee carried out the day-to-day care of A.M. Thus, this is not a case where the third party assumed the parental status against the wishes of the biological parent. Cf. B.A. and A.A. v. E.E.; Gradwell v. Strausser. The Superior Court aptly noted, under similar circumstances, that a biological parent's rights "do not extend to erasing a relationship between her partner and her child which she voluntarily created and actively fostered simply because after the parties' separation she regretted having done so." J.A.L. v. E.P.H., 682 A.2d at 1322.
Appellant further contends that Appellee can not stand in loco parentis to A.M. because Appellee merely acted as a caretaker and because A.M. was never in Appellee's sole care. She relies on Argenio v. Fenton, 703 A.2d 1042 (Pa.Super. 1997), where the Superior Court denied in loco parentis status to a grandparent who daily cared for the child. The court based its conclusion on the fact that the grandmother "proved that she acted as no more than a care-taker, in effect, a baby-sitter for the child, albeit a frequent caretaker." Id. at 1044. The instant case is distinguishable as Appellee established that she assumed a position more significant than a frequent caretaker. Although the parties gave conflicting versions of what role Appellee played in A.M.'s life, the hearing officer resolved questions of credibility in Appellee's favor. As the record supports the hearing officer's finding that Appellee lived with Appellant and A.M. as a family unit and that Appellee assumed the role of co-parent, Appellant's claim fails. Additionally, whether or not A.M. was left in the "sole" care of Appellee is not controlling as Appellee has demonstrated that she assumed a parental status and discharged parental duties.
Finally, Appellant contends that our Court should adopt the approach taken by the United States Supreme Court in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). There, a divided Court struck a Washington statute that provided, in pertinent part, that "[a]ny person may petition the court for visitation rights at any time" and that "[t]he court may order visitation rights for any person when visitation may serve the best interest of the child." The Court held that the statute, as applied to the mother and family at issue, infringed upon the mother's fundamental right to make decisions concerning the care, custody and control of her children, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. It based its decision on the grounds that the statute was "breathtakingly broad," id. at 2060, and that the state court gave no deference to the mother's determination that more limited visitation with the third party (grandparents) was in the best interests of her children.
Unlike Troxel, the instant case does not involve an overly broad statute or the abandonment of the presumption that a fit parent will act in the best interests of the child.[8] Here, the issue is one of standing based upon a well-established common law doctrine. A determination of standing *920 simply implies that the party has a substantial interest in the subject matter of the litigation and that the interest is direct, immediate and not a remote consequence. Ken R. v. Arthur Z., 682 A.2d at 1270. Thus, our opinion does not speak to Appellee's chance of success on the merits, but merely affords her the opportunity to fully litigate the issue.[9]
In summary, as Appellee has established that she assumed a parental status and discharged parental duties with the consent of Appellant, the lower courts properly found that she stood in loco parentis to A.M. and therefore had standing to seek partial custody for purposes of visitation.
Accordingly, the order of the Superior Court is affirmed.
Justice CAPPY files a concurring opinion.
Justice SAYLOR files a dissenting opinion in which Justice CASTILLE joins.
CAPPY, Justice, concurring.
I join the majority opinion. I note that I fully agree with the majority that this court has never considered "[t]he ability to marry the biological parent and the ability to adopt the subject child [to be] ... factors in determining whether the third party assumed a parental status and discharged parental duties." Majority slip op. at 8. In fact, we have recently issued a decision that stands for quite the opposite proposition. In Charles v. Stehlik, 560 Pa. 334, 744 A.2d 1255 (2000), we addressed a matter in which the trial court granted custody to the stepfather following the biological mother's death. The biological father challenged this order. We affirmed the award of custody in favor of the stepfather, even though the stepfather was precluded from adopting the child since the biological father's parental rights had not been terminated and notwithstanding the fact that there had been no finding that the biological father was unfit. Thus, it is my opinion that a finding that a person may stand in loco parentis to a child regardless of that person's ability to marry the biological parent or to adopt the child is consonant with established precedent from this court.
SAYLOR, Justice, dissenting.
I differ with the majority in two essential respects. First, I believe that the child custody provisions of the Domestic Relations Code, 23 P.S. §§ 5301-5314, are due greater emphasis. The majority downplays the significance of the legislative scheme primarily because "Appellee has never relied on a statutory provision and instead has invoked the common law doctrine of in loco parentis." Maj. Op. at 918. Regardless of the arguments chosen by a particular litigant, however, where the Legislature has created a framework governing all facets of the resolution of child custody disputes, it is questionable whether a common law doctrine can retain independent viability, other than as a reference for contextualizing the legislative policy choices made. See N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 50:05 (6th ed.2000) ("general and comprehensive legislation, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter"). At all events, a common law doctrine may not, *921 after a statutory pronouncement on the same subject, continue to develop in a manner inconsistent with the statute. See id. § 50:01 ("In cases of conflict between legislation and the common law, legislation will govern because it is the latest expression of the law."). In the child custody arena, therefore, the common law doctrine of in loco parentis should be understood and applied within the framework of the Domestic Relations Code.
As stated in Section 5301 of the Domestic Relations Code, 23 P.S. § 5301, the statutory child custody provisions are intended "to assure a reasonable and continuing contact of the child with both parents after a separation or dissolution of the marriage and the sharing of the rights and responsibilities of child rearing by both parents." This policy statement implies that child custody disputes are understood as occurring primarily within the framework of biological or legal parenting and the break-up of an attendant marital relationship; this is reinforced by the ensuing provisions, each of which reiterates Section 5301's emphasis.[1] By dismissing as irrelevant Appellee's statutory incapacities to marry Appellant and to become a legal parent of A.M., the majority undermines the legislature's prerogative to define the parameters of its own policy.
Moreover, the statute's focus on legally recognized familial relationships proceeds from fundamental policy considerations, chiefly the long-recognized interest of the natural parent in raising her child without governmental interference (including being forced to defend that interest in court). See generally R.M. v. Baxter, 565 Pa. 619, 627-32, 777 A.2d 446, 451-54 (2001) (Saylor, J., dissenting). In deference to this fundamental interest, standing to seek custody of the child as against the parent has always been closely circumscribed.[2] Significantly, in the only provision of the child custody statute that incorporates in loco parentis, the doctrine is employed to confine, not to expand, the scope of standing to petition for custody. See 23 P.S. § 5313(b) (to establish standing to seek custody of child who is not dependent or at risk, grandparent must demonstrate twelve months of in loco parentis status, in addition to other factors).[3] The majority's invocation of the doctrine to expand standing would therefore appear to be at odds with the Legislature's expressed, salient intentions.[4]
*922 My second point of disagreement with the majority concerns its application of the in loco parentis doctrine itself. Although the majority refers to the established definition of the doctrine, see Maj. Op. at 916 (citing Commonwealth ex rel. Morgan v. Smith, 429 Pa. 561, 241 A.2d 531 (1968)), its analysis does not attribute weight to the context in which the concept developed. Historically, this Court had confined its consideration of the application of the in loco parentis doctrine to decisions concerning persons with legal or biological ties to the subject child (typically stepparents or blood relatives), as had the intermediate appellate courts, with isolated exceptions.[5] This context highlights the defining features of the doctrine, which are not only the practical or emotional, but also the legal, incidents of parenthood. See Commonwealth v. Gerstner, 540 Pa. 116, 124, 656 A.2d 108, 112 (1995) ("In loco parentis describes a relationship in which one assumes the legal rights and duties of parenthood." (emphasis in original)); Morgan, 429 Pa. at 565, 241 A.2d at 533 (in loco parent "puts himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship"); Kransky v. Glen Alden Coal Co., 354 Pa. 425, 428, 47 A.2d 645, 647 (1946) (in loco parent "assume[s] the rights, duties and responsibilities of a lawful parent to the child"); accord BLACK'S LAW DICTIONARY 787 (6th ed.1990) (defining in loco parentis as "[i]n the place of the parent; ... charged, factitiously, with a parent's rights, duties, and responsibilities"). Thus, a faithful application of the in loco parentis doctrine requires, at a minimum, due regard to the legal definitions of the relevant relationships. In this case, because Appellee's relationships with Appellant and with A.M. are not recognized as familial relationships under Pennsylvania law, see 23 P.S. §§ 1704, 2903, I believe that the Court's decision to recognize her claim to in loco parentis status vis-à-vis A.M. marks not only a departure from established common law principles, but also one which appears to be in conflict with an expressed legislative design.
There is little doubt that Appellee established close relationships with both A.M. and Appellant. Certainly, those relationships, as well as Appellee's sincere interest in A.M.'s well being, denote important concerns in the formulation of policy concerning child custody. But there are respectable competing considerations as well, considerations to which the Legislature, whose responsibility it is to weigh *923 such factors, has in this instance accorded primacy. As the legislative policy is currently fashioned, emotional bonds and a demonstrated custodial interest, outside of the context of legally recognized familial relationships, are not sufficient grounds to confer standing to petition for child custody over and against the natural parent's interests.
For these reasons, I respectfully dissent.
Justice CASTILLE joins this dissenting opinion.
NOTES
[1] The sperm donor's parental rights were terminated after the child was born.
[2] Appellant subsequently changed this designation after the parties separated.
[3] The parties had entered a consent order, wherein they agreed that the hearing officer would take testimony and make findings of fact and recommendations relative to Appellee's standing and her request for partial custody/visitation with the minor child. The parties also reserved their rights to file exceptions and submit the hearing officer's recommendations to the trial court for review.
[4] Appellant also filed an untimely request for a hearing before the trial court, which was denied.
[5] Judge Del Sole filed a concurring and dissenting opinion. Therein, he agreed with the majority's disposition of the standing issue, but would have vacated the stay and permitted implementation of the trial court's visitation order without prejudice to either party to seek changes based on the child's best interests.
[6] Persons other than biological parents are "third parties" for purposes of custody disputes. Gradwell v. Strausser, 416 Pa.Super. 118, 610 A.2d 999, 1001 (1992).
[7] To the contrary, the Superior Court in Bupp v. Bupp, 718 A.2d 1278 (Pa.Super.1998), granted a live-in paramour in loco parentis standing to seek partial custody of his girlfriend's child on the grounds that the paramour assumed a parental status and discharged parental duties with the consent of the biological mother. The court rejected the mother's contention that every paramour thereafter could then seek visitation with her child. It reasoned that for the mother's assertion to be accurate, each paramour would have to take on the parental status necessary for standing and establish that partial custody would be in the best interests of the child under the standards applicable to third parties. The court concluded that it was in the mother's control as to whom she permitted her child to foster relationships with and that she could not eradicate such relationships when her own relationship with the third party fails.
[8] We recently reaffirmed in Charles v. Stehlik, 744 A.2d at 1258, that where the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced and that the evidentiary scale is tipped hard to the biological parent's side.
[9] As noted, Appellee has already litigated the issue of whether visitation is in A.M.'s best interests. The Superior Court, however, found that the record was inadequate to support the trial court's finding and remanded for a hearing on the matter. This portion of the Superior Court order is not before our Court.
[1] See 23 P.S. §§ 5302-5314 (detailing rights and responsibilities of parties to custody disputes).
[2] See Ken R. v. Arthur Z., 546 Pa. 49, 55, 682 A.2d 1267, 1271 (1996) ("the legislature has allowed court interference with the parents' right to custody only in rare and exceptional circumstances"); Jackson v. Garland, 424 Pa.Super. 378, 382, 622 A.2d 969, 970-71 (1993) ("The law protects the natural parent's relationship with his or her child.... In furtherance of this policy, the legislature has specified limited circumstances in which governmental intrusion into the family is warranted."); cf. Troxel v. Granville, 530 U.S. 57, 73, 120 S.Ct. 2054, 2064, 147 L.Ed.2d 49 (2000) (finding unconstitutional a non-parental visitation statute "which places no limits on either the persons who may petition for visitation or the circumstances in which such a petition may be granted").
[3] The legislative history of section 5313(b) reinforces the conclusion that in loco parentis was understood as a limiting factor. See R.M., 565 Pa. at 628-30, 777 A.2d at 452-53 (Saylor, J., dissenting).
[4] As the Superior Court noted, courts in several states have cited in loco parentis and related doctrines (e.g., "de facto parent," "psychological parent") in granting standing to petition for child custody. See T.B. v. L.R.M., 753 A.2d 873, 884 n. 7 (Pa.Super.2000) (citing cases). Notably, however, most such decisions are grounded in legislative policy pronouncements. See, e.g., Rubano v. DiCenzo, 759 A.2d 959 (R.I.2000); V.C. v. M.J.B., 163 N.J. 200, 748 A.2d 539 (N.J. 2000); Ellison v. Ramos, 130 N.C.App. 389, 502 S.E.2d 891 (1998); In re Custody of C.C.R.S., 892 P.2d 246 (Colo.1995); Bodwell v. Brooks, 141 N.H. 508, 686 A.2d 1179 (1996); cf. Geibe v. Geibe, 571 N.W.2d 774 (Minn.Ct.App.1997) (recognizing in loco parentis as statutory ground of visitation rights but finding it inapplicable on facts presented); but see E.N.O. v. L.M.M., 429 Mass. 824, 711 N.E.2d 886 (1999) (affirming grant of visitation rights to mother's former same-sex partner, notwithstanding lack of specific statutory authorization, based on probate court's equity jurisdiction); Holtzman v. Knott, 193 Wis.2d 649, 533 N.W.2d 419 (1995) (same). By contrast, in those states whose domestic relations statutes do not recognize the relationship involved as a basis for a custody petition, arguments for standing under in loco parentis and related theories have consistently been rejected. See, e.g., In re Thompson, 11 S.W.3d 913 (Tenn.Ct.App.1999); Kazmierazak v. Query, 736 So.2d 106 (Fla.Dist.Ct.App.1999); In re Marriage of Sleeper, 328 Or. 504, 982 P.2d 1126 (1999); Kathleen C. v. Lisa W., 71 Cal. App.4th 524, 84 Cal.Rptr.2d 48 (1999), and cases cited therein; Titchenal v. Dexter, 166 Vt. 373, 693 A.2d 682, 685-90 (1997); In re Ash, 507 N.W.2d 400 (Iowa 1993); Alison D. v. Virginia M., 77 N.Y.2d 651, 569 N.Y.S.2d 586, 572 N.E.2d 27 (1991).
[5] I acknowledge that such exceptions include J.A.L. v. E.P.H., 453 Pa.Super. 78, 682 A.2d 1314 (1996), the holding of which the majority endorses here.