OPINION

ZAPPALA, Justice.
This case involves the application of the doctrine of in loco parentis as a method of conferring standing on one seeking partial custody of a child for purposes of visitation. Because the evidence establishes that Appellee assumed a parental status and discharged parental duties with the consent of the biological parent, the lower courts properly held that Appellee possessed standing to seek visitation. Accordingly, we affirm.
The record establishes that Appellant and Appellee, both females, engaged in an exclusive, intimate relationship. The parties shared finances and expenses through a joint bank account and jointly purchased *915 a home. The parties decided to have a child. They agreed that Appellant would be impregnated by donor sperm and that Appellee would choose the donor.[1] Appel-lee cared for Appellant during her pregnancy and attended childbirth classes with her. Appellee was the designated co-parent for purposes of being present in the operating room during the birth.
The child, A.M., was born on August 27, 1998. The parties lived together with the child, but did not enter into a formal parenting agreement. Appellant named Ap-pellee as guardian of the child in her will.[2] Appellant and Appellee shared day-to-day child rearing responsibilities, including taking A.M. for medical check-ups and other appointments. A.M. referred to Appel-lee as “Aunt [T.]” and referred to Appel-lee’s sisters as “aunts” as well. Appellee was active, yet deferential to Appellant in making parental decisions. Appellee either cared for A.M. during the day or took her to daycare. When A.M. fell ill, Appel-lee stayed home from work to care for her. Appellee had exclusive responsibility for A.M. when Appellant was away from home. The parties also took family vacations together with A.M.
In May of 1996, Appellant and Appellee purchased a new home. Shortly thereafter, Appellee left the home and engaged in a relationship -with another woman. In August of 1996, the parties separated. Appellee visited A.M. on September 4, 1996. Thereafter, Appellant refused all visitation requests, telephone calls and gifts for the child.
On October 3, 1996, Appellee filed a “Complaint for Shared Legal and Partial Custody and Visitation.” Therein, she contended that she should be granted partial custody and visitation because she acted as A.M.’s parent for more than three years while residing with Appellant. Appellant filed preliminary objections to the complaint, contending that Appellee lacked standing to sue for visitation. On March 17, 1997, a hearing officer held a hearing on both standing and custody/visitation.[3] Relying on J.A.L. v. E.P.H., 453 Pa.Super. 78, 682 A.2d 1314 (1996), the hearing officer concluded that Appellee had standing to seek custody/visitation pursuant to the doctrine of in loco parentis. The hearing officer also found that it would be in A.M.’s best interests to grant Appellee partial custody for purposes of visitation.
Appellant filed timely exceptions to the hearing officer’s report.[4] The common pleas court adopted the hearing officer’s recommendations and granted Appellee one visitation period per month. The order explicitly recognized that the visitation arrangement is subject to continued review. On September 24, 1997, Appellant filed an appeal in Superior Court. She also filed a petition in the trial court for a stay pending appeal, which was denied. Appellant subsequently filed an application for a stay in Superior Court, which was granted on December 5, 1997, and remains in effect.
*916 On the merits, the en banc Superior Court agreed that Appellee stood in loco parentis to A.M. and therefore had standing to seek visitation. It concluded, however, that the record did not provide an adequate basis for review of the trial court’s decision that visitation was in A.M.’s best interests. Accordingly, it vacated the visitation order and remanded for a full hearing to determine whether visitation was in A.M.’s best interests.[5]
We granted allocatur solely to examine whether the lower courts properly applied the common law doctrine of in loco paren-tis as a method of conferring standing upon Appellee to seek partial custody of A.M. for purposes of visitation.
The scope of review applied by an appellate court to a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that is not supported by competent evidence. McMillen v. McMillen, 529 Pa. 198, 602 A.2d 845, 847 (1992). However, this broad scope of review does not vest an appellate court with the duty or privilege of making its own independent determination. An appellate court may not interfere with the trial court’s factual conclusions unless they are unreasonable in view of the trial court’s factual findings and thus represent an abuse of discretion. Id.
It is well-established that there is a stringent test for standing in third-party suits[6] for visitation or partial custody due to the respect for the traditionally strong right of parents to' raise their children as they see fit. R.M. v. Baxter, 565 Pa. 619, 777 A.2d 446, 450 (2001). The courts generally find standing in third-party visitation and custody cases only where the legislature specifically authorizes the cause of action. Id. A third party has been permitted to maintain an action for custody, however, where that party stands in loco parentis to the child. Gradwell v. Strausser, 610 A.2d at 1002.
In loco parentis is a legal status and proof of essential facts is required to support a conclusion that such a relationship exists. Kransky v. Glen Alden Coal Company, 354 Pa. 425, 47 A.2d 645, 646 (1946). Early cases referencing the doctrine of in loco parentis concerned entitlement to and compensation for children’s services. See generally Logan v. Murray, 6 Serg. & Rawle 175 (Pa.1820). The status of in loco parentis has also been referenced in cases involving whether a child should be treated as the child of an in loco parent for life insurance purposes, Young v. Hipple, 273 Pa. 439, 117 A. 185 (1922), and for purposes of entitlement to workers’ compensation benefits. Kransky. In recent years, however, the doctrine has been used almost .exclusively in matters of child custody. Commonwealth v. Gerstner, 540 Pa. 116, 656 A.2d 108, 112 (1995).
The phrase “in loco parentis ” refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of in loco parentis embodies two ideas; first, *917 the assumption of a parental status, and, second, the discharge of parental duties. Id.; Commonwealth ex rel. Morgan v. Smith, 429 Pa. 561, 241 A.2d 531, 533 (1968). The rights and liabilities arising out of an in loco parentis relationship are, as the words imply, exactly the same as between parent and child. Spells v. Spells, 250 Pa.Super. 168, 378 A.2d 879, 882 (1977). The third party in this type of relationship, however, can not place himself in loco parentis in defiance of the parents’ wishes and the parent/child relationship. B.A. and A.A. v. E.E., 559 Pa. 545, 741 A.2d 1227, 1229 (1999); Gradwell v. Strausser, 610 A.2d at 1003.
Appellant first contends that our Court should abandon the doctrine of in loco parentis as a means of conferring standing in custody cases. She argues that where the biological parent is fit and opposes custody/visitation, the government should not interfere with the biological parent’s wishes. Appellant also asserts that there is no statutory protection of a former partner’s interest in the child of another and that Appellee does not fall within the zone of interest that the statute seeks to protect. She maintains that it is the role of the legislature, not the courts, to debate whether public policy dictates that such protection is warranted. Appellant relies on this Court’s decision in Ken R. v. Arthur Z., 546 Pa. 49, 682 A.2d 1267 (1996), where we held that a sibling does not have standing to sue for visitation because the statutory scheme does not protect .a sibling's interest in that regard.
Appellant’s claims are not persuasive. Initially, it should be noted that Appellant did not argue in the lower courts that the well-established doctrine of in loco paren-tis should be abandoned. Rather, she argued that Appellee did not satisfy the requirements necessary for the assumption of the status. Thus, it is questionable whether the vitality of the in loco parentis doctrine is properly presented in this appeal. In any event, Appellant offers no persuasive reason why the facts of this particular case warrant such a far-reaching change in the common law — a change that could potentially affect the rights of stepparents, aunts, uncles or other family members who have raised children, but lack statutory protection of their interest in the child’s visitation or custody.
As the Superior Court noted in J.A.L. v. E.P.H.,
The in loco parentis basis for standing recognizes that the need to guard the family from intrusions by third parties and to protect the rights of the natural parent must be tempered by the paramount need to protect the child’s best interest. Thus, while it is presumed that a child’s best interest is served by maintaining the family’s privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child’s eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child’s best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent’s objections.
682 A.2d at 1319-20.
We likewise reject Appellant’s contention that Appellee lacks standing because the statutory scheme does not encompass former partners or paramours of *918 biological parents.[7] See 23 Pa.C.S. § 5301 (public policy of Commonwealth is to assure continuing contact between children and their parents and grandparents); see also 23 Pa.C.S. § 5313 (grants grandparents standing to petition for custody). Although the factual basis of the claim is accurate, this fact is irrelevant, as Appellee has never relied upon a statutory provision and instead has invoked the common law doctrine of in loco parentis. The mere fact that the statute does not reference the doctrine can not act to repeal by implication what has been entrenched in our common law. See Metropolitan Property and Liability Insurance Company v. Insurance Commissioner, 525 Pa. 306, 580 A.2d 300, 302 (1990) (legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded). In addition, the legislature never revised the domestic relations code to preclude in loco parentis standing, even after the courts had upheld the doctrine and its applicability in this regard. See Pa.C.S. § 1922(4) (when court has construed statutory language, the legislature in subsequent statutes on same subject intends the same construction).
Appellant’s reliance on Ken R. is therefore misplaced. Ken R. did not involve settled common law principles such as in loco parentis, but concerned a request that custody and visitation rights be “judicially extended” to those with sibling bonds. Id. at 1269. Applying expressio unius est ex-clusio alteruis, the Court in Ken R. held that “in light of our case law and principles of statutory construction, we are constrained to find that siblings do not have standing to seek court ordered visitation with their siblings in Pennsylvania.” Id. at 1270. Appellee cogently notes that our Court did not reverse a common law right in Ken R. as there was no common law doctrine at stake.
Appellant alternatively argues that, assuming we reaffirm the doctrine of in loco parentis as a method of conferring standing, Appellee can not meet its requirements. Specifically, she contends that because Appellee can never legally adopt A.M., she can not assume the obligations of a “lawful parent.” Appellant relies on statutory authority precluding same sex marriages, 23 Pa.C.S. § 1704, and case law holding that a parent’s same-sex partner can not adopt that parent’s child without the parent relinquishing her parental rights. In re Adoption of C.C.G., 762 A.2d 724 (Pa.Super.2000); In re Adoption of R.B.F., 762 A.2d 739 (Pa.Super.2000), alloc. granted, 784 A.2d 119, 2001 Pa LEXIS 1718 (Pa.2001).
Simply put, the nature of the relationship between Appellant and Appellee has no legal significance to the determination of whether Appellee stands in loco paren-tis to A.M. The ability to marry the biological parent and the ability to adopt the subject child have never been and are not now factors in determining whether the third party assumed a parental status and *919 discharged parental duties. What is relevant, however, is the method by which the third party gained authority to do so. The record is clear that Appellant consented to Appellee’s performance of parental duties. She encouraged Appellee to assume the status of a parent and acquiesced as Ap-pellee carried out the day-to-day care of A.M. Thus, this is not a case where the third party assumed the parental status against the wishes of the biological parent. Cf. B.A. and A.A. v. E.E.; Gradwell v. Strausser. The Superior Court aptly noted, under similar circumstances, that a biological parent’s rights “do not extend to erasing a relationship between her partner and her child which she voluntarily created and actively fostered simply because after the parties’ separation she regretted having done so.” J.AL. v. E.P.H., 682 A.2d at 1322.
Appellant further contends that Appellee can not stand in loco parentis to A.M. because Appellee merely acted as a caretaker and because A.M. was never in Appellee’s sole care. She relies on Argenio v. Fenton, 703 A.2d 1042 (Pa.Super.1997), where the Superior Court denied in loco parentis status to a grandparent who daily cared for the child. The court based its conclusion on the fact that the grandmother “proved that she acted as no more than a care-taker, in effect, a baby-sitter for the child, albeit a frequent caretaker.” Id. at 1044. The instant case is distinguishable as Appellee established that she assumed a position more significant than a frequent caretaker. Although the parties gave conflicting versions of what role Appellee played in A.M.’s life, the hearing officer resolved questions of credibility in Appellee’s favor. As the record supports the hearing officer’s finding that Appellee lived with Appellant and A.M. as a family unit and that Appellee assumed the role of co-parent, Appellant’s claim fails. Additionally, whether or not A.M. was left in the “sole” care of Appellee is not controlling as Appellee has demonstrated that she assumed a parental status and discharged parental duties.
Finally, Appellant contends that our Court should adopt the approach taken by the United States Supreme Court in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). There, a divided Court struck a Washington statute that provided, in pertinent- part, that “[a]ny person may petition the court for visitation rights at any time” and that “[t]he court may order visitation rights for any person when visitation may serve the best interest of the child.” The Court held that the statute, as applied to the mother and family at issue, infringed upon the mother’s fundamental right to make decisions concerning the care, custody and control of her children, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. It based its decision on the grounds that the statute was “breathtakingly broad,” id. at 2060, and that the state court gave no deference to the mother’s determination that more limited visitation with the third party (grandparents) was in the best interests of her children.
Unlike Troxel, the instant case does not involve an overly broad statute or the abandonment of the presumption that a fit parent will act in the best interests of the child.[8] Here, the issue is one of standing based upon a well-established common law doctrine. A determination of standing *920 simply implies that the party has a substantial interest in the subject matter of the litigation and that the interest is direct, immediate and not a remote consequence. Ken R. v. Arthur Z., 682 A.2d at 1270. Thus, our opinion does not speak to Appellee’s chance of success on the merits, but merely affords her the opportunity to fully litigate the issue.[9]
In summary, as Appellee has established that she assumed a parental status and discharged parental duties with the consent of Appellant, the lower courts properly found that she stood in loco parentis to A.M. and therefore had standing to seek partial custody for purposes of visitation.
Accordingly, the order of the Superior Court is affirmed.
Justice CAPPY files a concurring opinion.
Justice SAYLOR files a dissenting opinion in which Justice CASTILLE joins.

. The sperm donor’s parental rights were terminated after the child was born.

. Appellant subsequently changed this designation after the parties separated.

. The parties had entered a consent order, wherein they agreed that the hearing officer would take testimony and make findings of fact and recommendations relative to Appel-lee’s standing and her request for partial custody/visitation with the minor child. The parties also reserved their rights to file exceptions and submit the hearing officer’s recommendations to the trial court for review.

.Appellant also filed an untimely request for a hearing before the trial court, which was denied.

. Judge Del Sole filed a concurring and dissenting opinion. Therein, he agreed with the majority's disposition of the standing issue, but would have vacated the stay and permitted implementation of the trial court's visitation order without prejudice to either party to seek changes based on the child's best interests.

. Persons other than biological parents are “third parties” for purposes of custody disputes. Gradwell v.Strausser, 416 Pa.Super. 118, 610 A.2d 999, 1001 (1992).

. To the contrary, the Superior Court in Bupp v. Bupp, 718 A.2d 1278 (Pa.Super.1998), granted a live-in paramour in loco parentis standing to seek partial custody of his girlfriend’s child on the grounds that the paramour assumed a parental status and discharged parental duties with the consent of the biological mother. The court rejected the mother’s contention that every paramour thereafter could then seek visitation with her child. It reasoned that for the mother’s asser-lion to be accurate, each paramour would have to take on the parental status necessary for standing and establish that partial custody would be in the best interests of the child under the standards applicable to third parties. The court concluded that it was in the mother's control as to whom she permitted her child to foster relationships with and that she could not eradicate such relationships when her own relationship with the third party fails.

. We recently reaffirmed in Charles v. Stehlik, 744 A.2d at 1258, that where the cuslody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced and that the evidentiary scale is tipped hard to the biological parent’s side.

. As noted, Appellee has already litigated the issue of whether visitation is in A.M.’s best interests. The Superior Court, however, found that the record was inadequate to support the trial court's finding and remanded for a hearing on the matter. This portion of the Superior Court order is not before our Court.