NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4178
_____

DAVID T. BREAKWELL; CHRISTINE A. BREAKWELL,

Appellants

v.

ALLEGHENY COUNTY DEPARTEMENT OF HUMAN SERVICES, OFFICE OF
CHILDREN, YOUTH & FAMILY SERVICES; ALEXIS ANN SAMULSKI; LINDA
DEDOMINICIS; TERA TERLECKI in their individual capacities
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 08-cv-00389)
District Judge: Honorable Nora B. Fischer
_____

Submitted Under Third Circuit LAR 34.1(a)
October 19, 2010

Before: HARDIMAN, GREENAWAY, JR., and NYGAARD, *Circuit Judges*.

(Filed: October 22, 2010)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

David and Christine Breakwell appeal the District Court's grant of summary

judgment in favor of Allegheny County, an Assistant County Solicitor, and two

employees of the County's Office of Children, Youth, and Families (CYF). We will affirm.

I.

Because we write for the parties, we recount only the essential facts and we do so, as we must, in the light most favorable to the Breakwells.

The Breakwells are F.B.'s paternal grandparents and have had physical custody of her since October 15, 2005. On December 14, 2005, following the arrests of both of F.B.'s parents, Judge Kim Berkeley Clark entered an emergency shelter order granting the Breakwells temporary custody of F.B. and suspending visitations between F.B. and her parents. On January 27, 2006, CYF attorney Alexis Samulski filed an Amended Petition for Dependency on behalf of F.B. and her brother, as well as their two half-siblings.

Judge Clark dismissed the dependency petition on May 22, 2006, concluding that because the Breakwells stood *in loco parentis* to F.B., she was not a "dependent" of the County. On appeal, the Pennsylvania Superior Court reversed, holding that Judge Clark "erred in dismissing appellant's dependency petition based on its finding that appellants stood *in loco parentis* to the subject child." The Breakwells were awarded permanent custody of F.B. by the Court of Common Pleas of Allegheny County on June 5, 2008.

Before the Breakwells were awarded permanent custody, CYF caseworker Tara Terlecki and her supervisor, Linda DeDominicis, visited the Breakwell residence four

2

times. During one of those visits on July 19, 2006, DeDominicis "had her hand on the door and kind of pulled to step in" before the Breakwells denied DeDominicis and Terlecki entry into their home. The Breakwells also allege that CYF threatened to remove F.B. from their home if they did not reinstitute visitation between F.B. and her mother, a directive which would have violated Judge Clark's emergency shelter order requiring prior court approval for any such visits.

The Breakwells sued under 42 U.S.C. § 1983, claiming that Terlecki, DeDominicis, Samulski, and Allegheny County violated their First, Fourth, and Fourteenth Amendment rights. The gravamen of the Breakwells' claim is straightforward: once they took physical custody of F.B. pursuant to a family agreement,[1] they stood *in loco parentis* to her, which forever precluded CYF from treating F.B. as a "dependent" of the County. The Breakwells argue that CYF violated their rights to privacy, family integrity, and substantive due process by conducting regular home visits, insisting upon visitations, and initiating dependency hearings absent any allegation of unfitness in their care or supervision of F.B.

The parties filed cross-motions for summary judgment and the Magistrate Judge issued a Report and Recommendation in favor of the County Defendants. The Breakwells timely objected, but the District Court adopted the findings of the Magistrate

3

Judge and held: (1) Terlecki, DeDominicis, and Samulski were protected by absolute and qualified immunity; (2) Allegheny County committed no constitutional violation by failing to train employees on the rights of *in loco parentis* custodians; and (3) the Rooker-Feldman doctrine required that it abstain from reviewing the Superior Court's decision reversing Judge Clark's holding that *in loco parentis* status is determinative in dependency proceedings.

II.

The District Court found that because Terlecki, DeDominicis, and Samulski (collectively, the Individual Defendants) were acting in a "prosecutorial role" in instituting dependency proceedings on behalf of F.B., they were absolutely immune from liability. The Breakwells claim this was error because they themselves were not the subjects of the dependency proceeding. Even if the Individual Defendants were acting in a prosecutorial role in initiating dependency proceedings, the Breakwells contend the Individual Defendants were acting outside of that role when they failed to abide by court orders and when they attempted to forcibly enter the Breakwells' home.

"[T]he Supreme Court has consistently held that [42 U.S.C. § 1983] did not abolish long-standing common law immunities from civil suits." *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 493 (3d Cir. 1997) (citing *Burns v. Reed*, 500 U.S.

---

[1] It is unclear whether F.B.'s biological mother assented to the custodial arrangement. Viewing the record in the light most favorable to the Breakwells, we

4

478, 484 (1991)). In *Ernst*, we held that social workers are "entitled to absolute immunity for their actions in petitioning and in formulating and making recommendations to the state court because those actions are analogous to functions performed by state prosecutors, who were immune from suit at common law." 108 F.3d at 493. But we do not "accord absolute immunity to 'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding." *Ernst*, 108 F.3d at 497 n.7.

The functions performed by child welfare workers in initiating dependency proceedings are analogous to those that prosecutors perform. Just as a prosecutor has absolute immunity for conduct "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), so too are caseworkers and CYF attorneys immune when initiating dependency actions. *Ernst*, 108 F.3d at 495. Because the Breakwells' claims against attorney Samulski are based solely on her actions as counsel for CYF during the dependency proceedings, we will affirm the District Court's summary judgment in favor of Samulski on all of the Breakwells' claims against her.

### III.

As for Terlecki and DeDominicis, we agree with the Breakwells that these CYF employees are not absolutely immune under *Ernst* because they acted outside the scope of the judicial process during home visits and while supervising visitations between F.B. and

assume that both biological parents consented to the arrangement.

5

her biological mother. We therefore turn to the question of whether Terlecki and DeDominicis are entitled to qualified immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether Terlecki and DeDominicis are entitled to qualified immunity, we must first determine if the Breakwells have adequately alleged a violation of a constitutional or statutory right that was clearly established at the time of their alleged conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. Because this inquiry "must be undertaken in light of the specific context of the case," a court must consider the state of the existing law at the time of the alleged violation. *See Paff v. Kaltenbach*, 204 F.3d 425, 431 (3d Cir. 2000).

The Breakwells allege three constitutional violations: (1) CYF's interference in the Breakwells' *in loco parentis* arrangement violated their First Amendment rights to familial association and integrity; (2) Terlecki's and DeDominicis's regular inspections of the Breakwells' home (and on one occasion, an attempted unconsented-to intrusion) violated their Fourth Amendment rights to be free from unreasonable searches and

6

seizures; and (3) the cumulative actions of Terlecki and DeDominicis, including threats to remove F.B. if the Breakwells did not continue visitations with F.B.'s mother, violated their Fourteenth Amendment rights to privacy, to maintaining custody of F.B., to familial association and integrity, and to substantive due process. We address each argument in turn.

A.

The Breakwells contend that Pennsylvania state law treats an *in loco parentis* relationship "exactly the same as [the relationship] between parent and child." *T.B. v. L.R.M.*, 786 A.2d 913 (Pa. 2001). Like natural parents, the Breakwells claim to have a fundamental liberty interest in "the care, custody, and control" of F.B., an interest which may not be compromised absent "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997).

We have never held that those standing *in loco parentis* to a child have a constitutional right to the continued care and supervision of that child. The Breakwells cite *Moore v. City of E. Cleveland* for the proposition that the "ambit of constitutional protection accorded the family extends beyond the relationship of birth parents and child." 431 U.S. 494, 499 (1977). Although *Moore* recognizes family members' fundamental interest in living in the same household, it does not guarantee an extended

7

family member an award of custody whenever a child's natural parents are subject to an investigation for allegations of abuse or neglect. *See Croft*, 103 F.3d at 1125 (holding that even for natural parents, the right to custody is not "absolute" and must be balanced against "the compelling interests of the state in protecting children from abuse").

The Breakwells claim the decision of the Pennsylvania Supreme Court in *T.B. v. L.R.M.*, 786 A.2d 913 (Pa. 2001)), clearly establishes that a natural parent has the same "rights and liabilities" as a "person who, although not a biological parent, has lived with the child and provided care, nurture, and affection" for that child. *Id.* at 917. However, the holding in *T.B. v. L.R.M.* addresses only the right of an *in loco parentis* guardian to seek custody of a child for visitation purposes.[2] *Id.* at 920. Pennsylvania law regarding the rights of *in loco parentis* guardians during dependency proceedings is less clear. *Compare In the Interest of DK*, 922 A.2d 929 (Pa. Super. Ct. 2007) (extending *T.B.*'s reasoning to dependency cases), *with In the Interest of L.C.*, 900 A.2d 378 (Pa. Super. Ct. 2006) (following the Pennsylvania Supreme Court's decision in *In Re Davis,* 465 A.2d 614 (Pa. 1983), which held that Pennsylvania statutory law[3] prohibits consideration of *in*

---

[2] Even in custody disputes, however, the rights of *in loco parentis* guardians are more limited than the rights of natural parents. While *in loco parentis* guardians must be given "the opportunity to litigate fully the issue of whether that relationship should be maintained," *T.B. v. L.R.M.*, 786 A.2d at 917, *in loco parentis* status "does not elevate a third party to parity with a natural parent in determining the merits of custody dispute." *Jones v. Jones*, 884 A.2d 915, 917 (Pa. Super. Ct. 2005).

[3] The Juvenile Act defines a "dependent child" as one who is without a parent,

8

*loco parentis* status in dependency proceedings); *In the Interest of C.B. and A.L*, 861 A.2d 287 (Pa. Super. Ct. 2004) (same).  Thus, the rights of an *in loco parentis* guardian to the continued care and supervision of a "dependent" child is far from "clearly established" under state law.

Accordingly, the District Court did not err in holding that Terlecki and DeDominicis were entitled to qualified immunity on the First Amendment claim.

B.

The Breakwells claim CYF violated their Fourth Amendment rights by conducting four home visits over the course of two-and-a-half years, which included one attempt to enter their residence without their consent.  We disagree.

On October 15, 2005, the Breakwells assented to an emergency home visit after assuming physical custody of F.B.  They agreed to a second visit on January 12, 2006,

---

guardian or legal custodian.  42 PA. CONS. STAT. ANN. § 6302.  The Pennsylvania Supreme Court has stated that "[t]here is no indication that the legislature intended 'parents' to include anything other than natural, blood relationship parents, and adoptive parents."  *In Re Davis,* 465 A.2d 614 (Pa. 1983); *In the Interest of C.B. and A.L*, 861 A.2d 287 (Pa. Super. Ct. 2004) ("*Davis* stands for the sound proposition that the doctrine of *in loco parentis* should not be employed when determining whether a child has a parent for purposes of determining whether the child is dependent and thus, whether agency involvement should be initiated.").  Moreover, while the Juvenile Act defines a "custodian" as one "who stands *in loco parentis* to the child," several state courts have construed the term "legal custodian" narrowly, as a person who is "awarded custody pursuant to a Court order."  *In re F.B.,* 927 A.2d 268 (Pa. Super. Ct. 2007).  CYF's narrow reading of "legal custodian" is therefore consistent with the state's "fundamental precept that the Juvenile Act should be interpreted to accord the most protection to children." *In the Interest of C.B. and A.L*, 861 A.2d 287 (Pa. Super. Ct. 2004).

after Judge Clark granted them temporary custody. A third consensual visit took place on January 27, 2006. Finally, on July 19, 2006, Terlecki and DeDominicis made an unannounced visit, but the Breakwells refused to consent to another inspection, so Terlecki and DeDominicis departed. Prior to being denied entry, DeDominicis "had her hand on the door and kind of pulled to step in." App. 169–70.

Viewing the foregoing facts in the light most favorable to the Breakwells, we have little trouble concluding that the District Court did not err in finding no Fourth Amendment violation. The first three home visits do not implicate the Fourth Amendment because they were consensual. *United States v. Wilson*, 413 F.3d 382, 388 (3d Cir. 2005). As for the final visit, Terlecki and DeDominicis were denied entry to the Breakwell home, so no "search" occurred. *United States v. Santana*, 427 U.S. 38, 42 (1976).

## C.

The Breakwells next contend that when taken together, the Individual Defendants' and the County's actions violated their Fourteenth Amendment rights. The District Court concluded that the record did not support a finding that Defendants' conduct was "so arbitrary" that it "can properly be said to shock the conscience." *Miller v. City of Phila.*, 174 F.3d 368, 376 (3d Cir. 1999). We agree.

As we have explained, the initiation of dependency proceedings on behalf of F.B., her brother, and two half-siblings did not violate the Breakwells' rights to familial integrity and association. Nor was there an unreasonable "search or seizure" of the Breakwells' home. Thus, the only conduct which could theoretically present a colorable constitutional claim was CYF's planning and supervision of visits between F.B. and her mother in violation of Judge Clark's December 14, 2005 order that "visits be suspended [between F.B. and her parents] until further order."

Indeed, the record indicates that between February and April of 2006, CYF arranged several visits with F.B.'s mother in violation of Judge Clark's December 2005 order. *See* App. 245–46. The fact that these visits were not previously authorized by Judge Clark, however, does not alone support a finding of conduct so arbitrary as to give rise to a colorable Fourteenth Amendment claim. All visits between F.B. and her mother were supervised by CYF employees at either the CYF Regional Office or the Center for Creative Play. *Id.* Moreover, the record shows that CYF caseworkers communicated regularly with the Breakwells regarding the times, locations, and types of supervision available for these visits. *Id.* Because Terlecki and DeDominicis developed a reasonable visitation plan that did not expose F.B. or the Breakwells to any significant risk of harm, their conduct did not "shock the conscience" and the Breakwells' Fourteenth Amendment claim must fail.

11

In sum, the District Court did not err when it found that Terlecki and DeDominicis were entitled to qualified immunity on the Fourth and Fourteenth Amendment claims.

D.

Absent any constitutional violation, the Breakwell's *Monell* claim against Allegheny County necessarily fails. *See Grazier v. City of Phila.,* 328 F.3d 120, 124 (3d Cir. 2003) ("There cannot be an 'award of damages against a municipal corporation based on the actions of . . . its officers when in fact . . . the officer[s] inflicted no constitutional harm.'").

IV.

For all the foregoing reasons, we will affirm the judgment of the District Court. Because we affirm the judgment on these grounds, we need not discuss the District Court's analysis under the Rooker-Feldman Doctrine.