J-A16022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KATIE AND FREDERICK RINDOCK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAEFORD AND EMILEE DECKER | : | No. 610 EDA 2022 |

Appeal from the Order Entered February 3, 2022
In the Court of Common Pleas of Wayne County Civil Division at No(s):
2021-30562

BEFORE:    McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JULY 6, 2022**

Katie and Frederick Rindock (Appellants) appeal from the order entered in the Wayne County Court of Common Pleas, sustaining the preliminary objections filed by Raeford Decker (Father) and Emilee Decker (Mother) (collectively Appellees) and dismissing Appellants' complaint seeking custody of Appellees' biological child, C.D. (Child), born in 2019.[1]  Appellants are the maternal aunt and uncle of Child and have served as Child's foster parents since December of 2019.  They contend the trial court abused its discretion or erred as a matter of law when it determined they lacked standing to pursue custody of Child.  For the reasons below, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Neither Child's date of birth nor gender is identified in the certified record.

We glean the following facts and procedural history from the limited record before us. Wayne County Children and Youth Services (WCCYS) initiated a dependency action after Child was abused while in the care and custody of Appellees. *See* Trial Ct. Op., 2/3/22, at 3. Appellants assert, and Appellees do not dispute, that Child was less than three months old when the abuse occurred.[2] Appellants' Brief at 5. As a result of the incident, Mother entered a plea of *nolo contendere* for endangering the welfare of a child[3] and was sentenced to a term of six to 48 months' incarceration. Appellants have been Child's foster care providers and maintained physical custody of Child from December of 2019 until November of 2021. Appellants' Complaint for Custody Pursuant to 23 Pa.C.S.A. § 5324, 11/23/21, at 2 (unpaginated).

"Throughout the dependency action, [Father] took actions to regain custody of [Child], and WCCYS, on two occasions, sought [c]ourt approval for a goal change from reunification to adoption[,]" however both requests were denied. Trial Ct. Op. at 3. Child was returned to Father "on or about November 22, 2021." Appellees' Preliminary Objections to Complaint for

---

[2] The facts surrounding the abuse are not in the certified record. In various filings, Appellants averred that Child was in the "Neo Natal Intensive Care Unit" after birth, and that the "near fatal" abuse occurred shortly after Child was discharged. Appellants' Brief in Opposition to [Appellees'] Preliminary Objections to [Appellants'] Complaint for Lack of Standing (Appellants' Brief in Opp.), 1/21/22, at 1; Appellants' Brief at 5. Appellants also state that, as a result of the abuse, Child has "extensive medical needs" including a "feeding tube [for] required medications throughout each day." Appellants' Brief at 6.

[3] *See* 18 Pa.C.S. § 4304(a).

Custody, 12/15/21, at 5 (unpaginated); *see also* Trial Ct. Op. at 3. The next day, November 23rd, Appellants filed a complaint seeking sole legal and physical custody of Child pursuant to 23 Pa.C.S. § 5324.[4] They averred that Child was 2 years old at that time (November of 2021) and had lived with them since December of 2019. Appellants' Complaint for Custody Pursuant to 23 Pa.C.S. § 5324 at 1-2 (unpaginated). They also claimed that Father was supporting Mother, despite her *nolo contendere* plea and incarceration for the abuse, and that Mother intended to reside with Father upon her release from prison. *See id.* at 2-3 (unpaginated). Appellants stated they were "exercis[ing] their rights [as] *in loco parentis*" and sought primary physical custody pursuant to Section 5324(2) and (5)(i). *Id.* at 2.

On December 15, 2021, Appellees filed preliminary objections to the custody complaint, asserting Appellants lacked standing to seek custody of Child. *See* Appellees' Preliminary Objections to Complaint for Custody at 1 (unpaginated). Appellees argued that Appellants were "merely foster parents in an open dependency matter," and not prospective adoptive parents; thus, they did not stand *in loco parentis* to Child and had no standing to seek custody of Child. *Id.* at 3-5 (unpaginated). Moreover, Appellees stated that Father "worked tremendously hard to alleviate the conditions that led to the dependency and physical custody of [Child] was restored to him by [WCCYS]

---

[4] Section 5324 of the Child Custody Act lists those individuals who have standing to file an action for physical or legal custody of a child. 23 Pa.C.S. § 5324.

- 3 -

on or about November 22, 2021." *Id.* at 5 (unpaginated). Thus, they sought dismissal of the custody complaint.

Appellants filed a brief in opposition to the preliminary objections asserting that they were "present at the hospital for the birth of [Child] and visited [Child] at the hospital" before Child was ever placed in their care. *See* Appellants' Brief in Opp. at 1-2. They insisted that Appellees' argument "overlook[ed their] *in loco parentis* status" as Child's maternal aunt and uncle, and that they "have established a strong bond" with Child. *Id.* at 5.

On January 28, 2022, the trial court heard argument on the preliminary objections. Thereafter, on February 3rd, the trial court filed an order, and accompanying opinion, sustaining Appellees' preliminary objection as to standing and dismissing Appellants' custody complaint. *See* Order, 2/3/22. This timely appeal follows.[5]

Appellants identify two, related issues for our review:

1. Did the trial court abuse its discretion and err as a matter of law in granting [Appellees'] preliminary objections in determining that [Appellants] lacked standing to pursue a custody action?

2. Did the trial court abuse its discretion and err as a matter of law in determining that [Appellants] lacked standing to pursue custody despite the fact that they are maternal aunt and uncle and stand *in loco parentis*?

---

[5] Pursuant to Pa.R.A.P. 1925(a)(2)(i), Appellants filed a concise statement of errors complained of on appeal along with their notice of appeal in this Children's Fast Track case. The trial court subsequently provided a "Statement of Reasons" for its ruling, relying on its February 3rd opinion and order. *See* Trial Ct. Statement of Reasons, 3/2/22.

Appellants' Brief at 7 (some capitalization omitted).

When reviewing a child custody order,

> [our] scope of review . . . is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that is not supported by competent evidence. However, this broad scope of review does not vest an appellate court with the duty or privilege of making its own independent determination. An appellate court may not interfere with the trial court's factual conclusions unless they are unreasonable in view of the trial court's factual findings and thus represent an abuse of discretion.

*T.B. v. L.R.M.*, 786 A.2d 913, 916 (Pa. 2001).

Appellants' argument challenges the trial court's determination that they did not have standing to pursue custody of Child.

> The application of the law of standing to child custody cases is done with a high degree of scrupulousness by our courts. This is not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well meaning. . . .

*Silfies v. Webster*, 713 A.2d 639, 643 (Pa. Super. 1998) (citations and quotation marks omitted). Consequently, in custody disputes, any "persons other than the natural parents are considered 'third parties.'" *McDonel v. Sohn*, 762 A.2d 1101, 1105 (Pa. Super. 2000).

Section 5324 of the Child Custody Act limits those individuals who have standing to seek custody of a child to the following:

(1) A parent of the child.

(2) A person who stands *in loco parentis* to the child.

(3) A grandparent of the child who is not *in loco parentis* to the child[ where certain other conditions are met] . . .

(4) Subject to paragraph (5), an individual who establishes by clear and convincing evidence all of the following:

    (i) The individual has assumed or is willing to assume responsibility for the child.

    (ii) The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.

    (iii) Neither parent has any form of care and control of the child.

(5) Paragraph (4) shall not apply if:

    (i) a dependency proceeding involving the child has been initiated or is ongoing; or

    (ii) there is an order of permanent legal custody under 42 Pa.C.S. § 6351(a)(2.1) or (f.1)(3) (relating to disposition of dependent child).

23 Pa.C.S. § 5324(1)-(5).

When considering whether a person stands *in loco parentis* to a child,

we must bear in mind:

The phrase "*in loco parentis*" refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child. **The third party in this type of relationship, however, can not place himself *in loco parentis* in defiance of the parents' wishes and the parent/child relationship.**

*T.B.*, 786 A.2d at 916–17 (citations omitted and emphasis added).

- 6 -

Appellants insist they have standing to seek custody of Child pursuant to Section 5324(2) and (5).[6] **See** Appellants' Brief at 10. They maintain the trial court overlooked the fact that, pursuant to Section 5324(2), they stood *in loco parentis* to Child and focused solely on their role as Child's foster parents. **Id.** at 10, 12. Appellants emphasize, however, that they "were the sole custodians of [Child] from 2019 until 2021 and fulfilled all the parental duties during" that time. **Id.** at 11. Moreover, they "established contact with [Child] since birth, with the consent of the parents, prior to the commencement of the dependency action." **Id.** Appellants insist they have a "strong bond" with Child and are "more than just foster parents, they are also blood relatives who stand *in loco parentis*." **Id.** at 12. They also contend they have standing pursuant to Section 5324(5) "in that there is a dependency proceeding initiated regarding [Child] since 2019." **Id.** at 10.

In finding Appellants lacked standing, the trial court explained that Appellants' role as foster parents precluded them from obtaining *in loco parentis* status with regard to Child. The court opined:

> [Child] was placed with [Appellants] by this Court when the dependency action was initiated by [WCCYS. Appellants] assumed the parenting roles on behalf of [Child] but never received legal custody of [Child] from this Court. Foster care has been defined as a child welfare service which provides substitute family care for a planned period for a child when his own family cannot care for him for a temporary or extended period, and when

---

[6] Although Appellants present two claims in their statement of questions, we discern no difference in their arguments. Thus, we address Appellants' claims as one.

adoption is neither desirable nor possible. ***Mitch v. Bucks County Children and Youth Social Service Agency***, 556 A.2d 419, 422 (Pa. Super. 1959). The distinctive features of foster care are first, that it is care in a family, it is noninstitutionalized substitute care, and second, that it is for a **planned** period— either temporary or extended. ***Id.*** Throughout the dependency action, [Father] took actions to regain the custody of [Child], and WCCYS, on two occasions, sought Court approval for a goal change from reunification to adoption. This Court denied both requests. The Court further ordered that no further goal change petitions were to be filed, and directed WCCYS to return physical custody of the minor child to [Father]. By its very nature, the foster parent/foster child relationship implies a warning against any deep emotional involvement with the child since under the given insecure circumstances this would be judged as excessive. ***Id.*** [Appellants] do not embody *in loco parentis* status due to a placement of [Child] with them pursuant to a dependency action. Because foster placement, unlike adoptive placement, is temporary in nature, and because foster parents are forewarned of the temporary nature of the placement, [Appellants] do not have standing to contest the custody of the minor child. ***See Id.*** Thus, [Appellants] lack standing to bring this custody action under 23 Pa.C.S.A. § 5324(2).

Trial Ct. Op. at 3-4 (some emphasis omitted).

We detect no abuse of discretion or error of law in the court's ruling. While Appellants emphasize the care they provided for Child during much of Child's first two years of life and the strong bond they developed, they ignore the fact that they provided that care, and developed their bond, as Child's **foster parents** *via* the dependency proceeding. As the trial court opined (and Appellants do not dispute) "foster parents lack standing to seek or contest

custody of their foster children." *See In re G.C.*, 735 A.2d 1226, 1230 (Pa. 1999) (Opinion in Support of Affirmance).[7] *See also* Appellants' Brief at 12.

Appellants, however, argue that the court overlooked their familial relationship with Child. Relying on *McDonel*, *supra*, they contend this Court has "acknowledged that close relatives who assume parenting responsibilities in a time of need . . . stand *in loco parentis*." Appellants' Brief at 12. Appellants emphasize their relationship with Child began **prior** to the dependency proceedings, noting "[t]hey attended the birth of [Child] and visited [Child] in the hospital." *Id.* Indeed, they assert that they "established contact with [Child] since birth, with the consent of [Appellees]," before Child was adjudicated dependent. *Id.* at 11. Thus, Appellants insist the trial court failed to consider that they "are more than just foster parents[.]" *Id.* at 12.

---

[7] We acknowledge the Court in *G.C.* affirmed the trial court's decision — that the foster parents lacked standing to seek custody of child in their care over custody of maternal grandfather — in an equally divided decision. However, in his Opinion in Support of Reversal, Justice Nigro opined that he would conclude the foster parents had "standing to contest a petition to transfer custody of their foster child to a **third party**." *G.C.*, 735 A.2d at 1232 (Nigro, J. Opinion in Support of Reversal) (emphasis added). Conversely, here, Appellants seek custody of Child over Child's biological father, to whom Child has been returned and whose parental rights have **not** been terminated. Moreover, the other Opinion in Support of Reversal, authored by Justice Newman and joined by Justice Castille, focused on the right of "any person" to file a petition under the Juvenile Act. *See id.* at 1233 (Newman, J. Opinion in Support of Reversal). In the present case, Appellants seek custody pursuant to the Child Custody Act, which, as noted above, limits those individuals who may file an action for custody. *See* 23 Pa.C.S. § 5324.

Appellants' reliance on *McDonel* is misplaced. In that case, like here, the child's maternal aunt and uncle sought custody over the child's biological father. *McDonel*, 762 A.2d at 1104-05. Unlike the case before us, the trial court determined the aunt and uncle stood *in loco parentis* to the child and awarded them joint legal and primary physical custody — a decision this Court affirmed on appeal. *Id.* at 1105-06. However, the facts in *McDonel* are significantly different from those *sub judice*.

In *McDonel*, the child was conceived while her father, a youth pastor, was having an extramarital affair with her mother, an 18-year-old woman, ten years his junior, whom he was counseling. *Id.* at 1103. The father initially challenged his paternity and had little contact with the mother or child during the child's first three and one-half years. *Id.* He then requested partial custody and began seeing the child one weekend per month. *Id.* Two years later, the mother attempted suicide and was placed on life support. *Id.* At that time, the maternal aunt and uncle filed for custody of the child; the father challenged their standing *via* preliminary objections. *Id.* at 1103-04. Following a hearing, the court found the maternal aunt and uncle stood *in loco parentis* to the child and awarded them joint legal and primary physical custody. *Id.*

In affirming the trial court's ruling on standing, this Court emphasized the evidence that the child spent a significant period of time with the maternal

aunt and uncle following her birth,[8] including "extended periods around the approximately six times that [the mother] was in the hospital for psychological treatment." *McDonel*, 762 A.2d at 1105. More importantly, prior to her death, the mother "executed a power of attorney granting *in loco parentis* powers" to both maternal aunt and uncle before the father began monthly visitations. *Id.* This Court stated:

> The document clearly evidences [the mother's] intent and desire that the [maternal aunt and uncle] assume parental responsibility, and they acted in accordance with this power, including enrolling [the child] in school and taking her to the doctor when she was in their custody.

*Id.* at 1106.

Indeed, as noted above, a third party may not "place himself *in loco parents* in defiance of the parents' wishes and the parent/child relationship." *T.B.*, 786 A.2d at 917. Where *in loco parentis* status has been established, there generally has been consent of at least one parent at some time prior to the claim. In *T.B.*, the third party (the appellee) and the child's mother, both females, were in an exclusive, intimate relationship when they decided to have a child. *Id.* at 915-16. Although they did not enter into a formal parenting agreement, the appellee shared daily parenting responsibilities with the mother, and the mother named the appellee child's guardian in her will. *Id.* at 915. After their relationship ended, the mother refused the appellee's

---

[8] The child stayed with maternal aunt and uncle more than 125 days in **each** of her first three years of life. *See McDonel*, 762 A.2d at 1105.

request for visitation, and the appellee filed a complaint for shared custody and visitation, claiming she stood *in loco parentis* to the child. ***Id.*** In concluding the appellee established standing, the Supreme Court opined:

> The record is clear that [the mother] consented to [the a]ppellee's performance of parental duties. She encouraged [the a]ppellee to assume the status of a parent and acquiesced as [the a]ppellee carried out the day-to-day care of [the child]. Thus, this is not a case where the third party assumed the parental status against the wishes of the biological parent. The Superior Court aptly noted, under similar circumstances, that a biological parent's rights "do not extend to erasing a relationship between her partner and her child which she voluntarily created and actively fostered simply because after the parties' separation she regretted having done so."

***Id.*** at 919 (citations omitted). ***See also Silfies***, 713 A.2d at 640, 645-46 (prospective adoptive parents — whom child visited and stayed with on a regular basis for over a year — had standing to seek custody of child after maternal grandmother ceased visitations).

Appellants' willingness to serve as Child's foster parents is commendable. However, they have failed to establish that they stood *in loco parentis* to Child irrespective of their role as foster parents. The fact that they are Child's blood relatives and visited Child in the hospital is insufficient to establish the "stringent test" for establishing *in loco parentis* status. ***See T.B.***, 786 A.2d at 916. Indeed, the significant care Appellants provided to Child was in their role as foster parents — a role that is "temporary in nature." ***See Mitch***, 556 A.2d at 422. Accordingly, we agree with the trial court that Appellants have failed to demonstrate they stood *in loco parentis* to Child in

- 12 -

order to establish standing pursuant to Section 5324(2) of the Child Custody Act.

Appellants also summarily claim they have standing pursuant to Section 5324(5).  **See** Appellants' Brief at 10.  However, they provide no further argument on this assertion, and for that reason, the claim is waived.  **See In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (claim undeveloped in brief is waived for appellate review) (citations omitted); Pa.R.A.P. 2119(a).

Nevertheless, we agree with the trial court that Appellants' reliance on Section 5324(5) is "misplaced."  **See** Trial Ct. Op. at 4.  Appellants appear to argue that paragraph (5) establishes standing when a child is subject to a dependency proceeding.  **See** Appellants' Brief at 10.  That is simply incorrect. Rather, paragraph (5) must be read in conjunction with paragraph (4). Paragraph (4) confers standing to an individual who assumes responsibility for a child, has a "sustained, substantial and sincere interest" in the child's welfare, and "[n]either parent has any form of care and control of the child." 23 Pa.C.S. § 5324(4)(i)-(ii).  As the trial court points out, paragraph (5) "negates the application" of paragraph (4) when, *inter alia*, "a dependency proceeding involving the child has been initiated or is ongoing[.]"  **See** 23 Pa.C.S. § 5324(5)(i).  Thus, even if Appellants could establish standing under paragraph (4) — a claim they have **not** made — paragraph (5)(i) would negate said standing because Child is involved in an ongoing dependency action.  **See id.**

Accordingly, we conclude the trial court did not abuse its discretion or err as a matter of law in determining Appellants failed to establish standing to seek custody of Child. Thus, we affirm the order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/06/2022