J-S11002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DAVID A. LYONS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEX MAJERCIK AND EMILY | : | No. 1445 WDA 2024 |
| HARRISON | : | |

Appeal from the Order Entered November 1, 2024
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  24DO01134

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: April 10, 2025**

David A. Lyons (Appellant) appeals from the November 1, 2024, order which 1) granted the preliminary objections filed by his former girlfriend, Emily Harrison (Mother), the mother of S.M. (Child) (a male born in June 2018); 2) dismissed Appellant's complaint for custody of Child for lack of standing; and 3) cancelled the previously scheduled custody conciliation conference.  After careful review, we reverse and remand for further proceedings, with instructions.

Appellant and Mother were involved in a relationship from approximately July 2020 until May 2024.[1]  Child has been diagnosed with autism, "for which

---

[1] Alex Majercik (Father) is Child's biological father.  Father and Mother were never married, and Father is not a party to the instant appeal.

he receives counseling and therapy services." Trial Court Opinion, 12/20/24,

at 3 (unnumbered).

The trial court summarized the relevant history of Appellant and

Mother's relationship:

> [Appellant] moved in with [] Mother in the Fall of 2020. [Appellant] never financially contributed to the part[ies'] household expenses, due to a lack of employment, but would help []Mother by providing care for [C]hild. [] Mother stated that while [Appellant] was living with her, he did not contribute to the household expenses, cook, or clean[, but he] would occasionally bathe [C]hild. [] Mother testified that she was responsible for all of the parental duties[,] but if she was working, [Appellant] would assume very basic duties for [C]hild, comparing [Appellant] to a babysitter.
>
> [] Mother further elaborated on [Appellant's] duties, when she testified that [Appellant] would transport her and [C]hild to doctor's visits but would not take [C]hild to doctor's appointments on his own. It is noted that Mother suffers from a seizure disorder and is unable to operate a vehicle. [] Mother stated that [Appellant] never made medical decisions on behalf of [C]hild, nor did he make any education[-]related decisions for [C]hild, stating Mother's consent was required for any of [C]hild's legal decisions. … Mother and [Appellant] ended their relationship in May of 2024. In June of 2024, [] Mother allowed [Appellant] to have a few visits with [C]hild. [] Mother testified that the visits were comparable to daytime babysitting[,] and visits ended after less than two weeks on account of visits causing [C]hild distress. According to [] Mother, [Appellant] often interfered with the parent-child relationship[,] going as far as canceling appointments with [C]hild's therapist.
>
> [] Mother stated that she never stopped acting as a parent to [C]hild, elaborating on how she provided all of the essentials for [C]hild's physical, mental, and developmental needs. [] Mother testified to [her] prolonged hospital stay in 2023. [] Mother explained that … she was a patient for approximately a 5-week period[,] and during that time[, Appellant] provided care for [C]hild.

Trial Court Opinion, 12/20/24, at 4-5 (unnumbered) (paragraph breaks added; citations to record omitted).

On July 9, 2024, Appellant filed a custody complaint, seeking shared legal custody and partial physical custody of Child. Appellant alleged he stands *in loco parentis* to Child. The trial court scheduled a custody conciliation conference for August 23, 2024.

Prior to the custody conciliation, Father submitted his criminal record or abuse history verification. **See generally** Pa.R.C.P. 1915.3-2. Father attached to his verification a "Consent of Birth Parent," stating, Appellant "has assumed the role and responsibilities of a parent and discharged parental duties of [C]hild with [Father's] knowledge and consent." Criminal Record/Abuse History Verification, 8/2/24, Attachment.[2]

On August 5, 2024, Mother filed preliminary objections, challenging Appellant's standing to file the custody complaint. The trial court continued the custody conciliation pending resolution of Mother's preliminary objections.

The trial court heard oral argument on Mother's preliminary objections. The court later conducted an evidentiary hearing on the issue of Appellant's

---

[2] Recognizing that such documents are most commonly filed in cases involving termination of parental rights and subsequent adoptions, the trial court stated, "It is unclear … whether said document is even legally binding or holds any significance, as the document makes no reference to [C]hild being adopted…." Trial Court Opinion, 12/20/24, at 1 (unnumbered).

standing.[3]  On November 1, 2024, the trial court entered an order sustaining Mother's preliminary objections, dismissing Appellant's complaint, and canceling the scheduled custody conciliation conference.  Appellant filed a timely notice of appeal and a simultaneous Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal.[4, 5]

Appellant raises the following issues for review:

I. Did the [trial] court commit an error of law or an abuse of discretion by granting [Mother's] preliminary objection regarding Appellant's standing in this matter?

II. Did the [trial] court commit an error of law or an abuse of discretion by dismissing [Appellant's] complaint for custody for lack of standing[?]

_____

[3] At the time of the hearing, Mother had an active Protection From Abuse order (PFA) against Appellant.  **See** Trial Court Opinion, 12/20/24, at 3 (unnumbered).  From the record, we are unable to ascertain whether the PFA is still in effect.  **But see** N.T., 10/29/24, at 8 (Mother testifying the PFA would expire in February 2025 if Appellant did not violate its terms).

[4] On December 4, 2024, this Court entered an order directing the trial court to enter its November 1, 2024, order on the docket.  The trial court complied.

[5] Appellant's counsel sought and obtained leave to withdraw from representation, after which Appellant retained new counsel for the instant appeal.  On January 1, 2025, appellate counsel filed an application for relief, requesting clarification as to whether the trial court's November 1, 2024, order is a final order, and whether Appellant would need to file an additional notice of appeal.  This Court confirmed the appeal properly lies from the November 1, 2024, order.

Appellant's Brief at 3 (some capitalization modified).[6, 7]

Both of Appellant's issues relate to his standing to seek custody of Child.

> Issues of standing generally raise pure questions of law for which we employ *de novo* review of a trial court's decision. As well, a challenge to asserted *in loco parentis* status in a particular context typically involves a fact-intensive inquiry and may implicate mixed questions of law and fact. Where factual findings and credibility determinations are at issue, we will accept them insofar as they are supported by the record. In … appeals of child custody … decisions, our plenary scope of review is of the broadest type; that is, an appellate court is not bound by the trial court's inferences drawn from its findings of fact and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are competently supported.

*In re Adoption of A.M.W.*, 289 A.3d 109, 116 (Pa. Super. 2023) (*en banc*) (citation omitted).

In his first issue, Appellant argues Mother's preliminary objection to Appellant's standing was not supported by evidence. Appellant's Brief at 12-13. Appellant contends there were no facts at issue, and therefore, the trial court improperly conducted an evidentiary hearing. *Id.* at 14-16.

Pursuant to Pa.R.C.P. 1028, a party may file a preliminary objection based on a lack of capacity to sue. Pa.R.C.P. 1028(a)(5). "If an issue of fact

---

[6] The argument section of Appellant's brief includes a third issue challenging the trial court's reliance on a single alleged incident in which he became physically violent toward Child. *See* Appellant's Brief at 34-41. Because Appellant did not raise this issue in his statement of questions involved, we will not consider the merits of his claim. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

[7] Mother has not filed an appellee's brief.

is raised, the court shall consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2). The Note to Rule 1028 explains that "[p]reliminary objections raising an issue under subdivision (a)… (5)… cannot be determined from facts of record." Pa.R.C.P. 1028, Note. Indeed, this Court has explained that "[w]hile standing issues sometimes can turn on pure questions of law, they more commonly turn on questions of fact." *C.G. v. J.H.*, 172 A.3d 43, 54 (Pa. Super. 2017) (footnote omitted); *see also Adoption of A.M.W.*, 289 A.3d at 116 (reiterating that "a challenge to asserted *in loco parentis* status in a particular context typically involves a fact-intensive inquiry and may implicate mixed questions of law and fact" (citation omitted)).

We disagree with Appellant's assertion that standing is a pure question of law in this case. Mother's challenge to Appellant's claim of *in loco parentis* status necessitated a fact-specific inquiry. *See* Pa.R.C.P. 1028(c)(2); *Adoption of A.M.W.*, 289 A.3d at 116. As such, the trial court did not err by conducting an evidentiary hearing on the threshold issue of standing. Appellant's first issue merits no relief.

In his second issue, Appellant asserts the trial court applied an incorrect legal standard in determining whether Appellant has *in loco parentis* standing. Appellant's Brief at 17. He argues, "Appellant's burden was not to prove that he took the place of the parent Mother but that he assumed a parental status and discharged parental duties with the consent of the parents." *Id.* at 19 (emphases in original). Appellant also claims he established *in loco parentis*

status, pointing to the trial court's acknowledgement that Appellant assumed responsibility for Child. *Id.* at 20-21. Appellant emphasizes 1) Mother's testimony that Appellant helped raise Child; 2) Child has a relationship with Appellant's family; 3) Father filed a "Consent of Birth Parent"; 4) Child was tested for autism at Appellant's request; and 5) Appellant was involved in Child's daily life, *i.e.*, helping Child dress every day, feeding Child breakfast, and driving Child to school. *See id.* at 22-27. Appellant also directs our attention to testimony by various witnesses who observed Appellant's interactions with Child. *See id.* at 27-29; *see also id.* at 27 (referencing the testimony of Child's paternal grandmother that Child calls Appellant "dad"). According to Appellant, he lived with Mother and Child as a "family unit" for multiple years. *Id.* at 30.

"Typically, absent a *prima facie* right to custody, a third party lacks standing to seek custody as against the natural parent." *A.C. v. E.K.*, \_\_\_ A.3d \_\_\_, 2025 WL 470283 at 5 (Pa. Super. 2025); *see also Liebner v. Simcox*, 834 A.2d 606, 609 (Pa. Super. 2003) ("Persons other than biological parents are third parties for purposes of custody disputes."). The Pennsylvania Child Custody Act authorizes the following individuals to initiate a custody action:

(1) A parent of the child.

(2) A person who stands *in loco parentis* to the child.

\* \* \*

(4) Subject to paragraph (5) [(relating to dependency proceedings)], an individual who establishes by clear and convincing evidence all of the following:

(i) The individual has assumed or is willing to assume responsibility for the child.

(ii) The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.

(iii) Neither parent has any form of care and control of the child.

23 Pa.C.S.A. § 5324.

"*In loco parentis* is a legal status and proof of essential facts is required to support a conclusion that such a relationship exists." ***A.C.***, ___ A.3d ___, 2025 WL 570283 at 5.

The term *in loco parentis* literally means in the place of a parent. A person stands *in loco parentis* with respect to a child when he or she assumes the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. Critical to our discussion here, *in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of, the wishes of a parent.

***Hunt v. Vardaro***, 317 A.3d 1046, 1050 (Pa. Super. 2024) (citation omitted).

Further, our Supreme Court has explained the principles underlying *in loco parentis* status:

The *in loco parentis* basis for standing recognizes that the need to guard the family from intrusions by third parties and to protect the rights of the natural parent must be tempered by the

- 8 -

paramount need to protect the child's best interest. Thus, while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.

*T.B. v. L.R.M.*, 786 A.2d 913, 917 (Pa. 2001) (citation omitted).

Moreover,

the fact that the petitioner lived with the child and the natural parent in a family setting, whether a traditional family or a nontraditional one, and developed a relationship with the child as a result of the participation and acquiescence of the natural parent must be an important factor in determining whether the petitioner has standing. Additionally, where only limited custody rights are sought, the limited nature of the intrusion into the biological family must be considered in deciding whether standing has been made out.

*A.C.*, ___ A.3d ___, 2025 WL 570283 at 6; *see also id.* (stating, "it has been suggested that where a petitioner who is not biologically related to the child, but has established a parent-like relationship with the child, seeks not to supplant the natural parent, but only to maintain his relationship with the child through reasonable visitation or partial custody, his burden to establish standing is easier." (citing *J.A.L. v. E.P.H.*, 682 A.2d 1314, 1320 (Pa. Super. 1996) (quotation marks and brackets omitted)).

Instantly, we acknowledge that, in its opinion, the trial court addressed Appellant's standing under both section 5324(2) and (4), and concluded

Appellant could not establish standing under either subsection. *See* Trial Court Opinion, 12/20/24, at 8-11 (unnumbered). However, Appellant only claimed to have standing under subsection 5324(2). *See* Custody Complaint, 7/9/24, ¶ 5; Brief in Opposition to Preliminary Objections, 9/16/24; *see also* N.T., 10/29/24, at 112-13 (Appellant's counsel highlighting the relevance of whether Appellant assumed parental duties of Child and whether he discharged parental duties). Thus, the trial court erroneously undertook an analysis of the requirements set forth in section 5324(4).

The trial court concluded Appellant lacks standing under section 5324(2):

> Mother always fulfilled her parental duties, as evidenced through the testimony of Mother and [Appellant,] and Mother was the primary caregiver for [C]hild when she was not at work. Mother provided for the basic necessities of [C]hild and made all of the legal decisions [a]ffecting [C]hild. It is clear that [Appellant] did not serve in those roles because Mother was the parent and not [Appellant]. While it is unrefuted that [Appellant] provided round the clock care for [C]hild during Mother's hospitalization, upon [her] release, Mother resumed her role and both parties were aware that Mother's hospitalization was only temporary. Despite []Father's lack of participation in [C]hild's life, the parenting duties have always been performed by Mother. The term "*in loco parentis*" means "in place of a parent" or "instead of a parent" and that term simply does not apply in the case at hand. Based on the above, [Appellant] is unable to satisfy his burden under 23 Pa.C.S. § [5324(2)].

Trial Court Opinion, 12/20/24, at 8-9 (unnumbered).

Upon review, we agree with Appellant that the trial court did not apply the correct standard when considering whether he had *in loco parentis* status. The court's brief analysis relied almost exclusively on Mother's continued

performance of parental duties. However, *in loco parentis* standing under section 5324(2) does not require a child to be lacking a parent. Indeed, Mother's ability to serve as Child's caregiver does not preclude Appellant from also establishing a parent-like relationship with Child. **See Liebner**, 834 A.2d at 610-11 (concluding the mother's ex-boyfriend stood *in loco parentis* to the child and had standing to seek visitation, where he lived with the mother and child for three years as a family unit and maintained contact with the child after the parties' separation).

As the trial court did not address whether Appellant stands *in loco parentis* to Child under the appropriate legal standard, we reverse the court's order and remand for the trial court to consider Appellant's standing under section 5324(2), using the principles set forth above. If the trial court is unable to undertake a full section 5324(2) analysis based on the current record, the court shall schedule an additional evidentiary hearing on the issue of standing.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/10/2025

- 11 -